**KELLEY DRYE & WARREN LLP**
  Kimberly C. Carter (State Bar No. 221283)
  Tahir L. Boykins (State Bar No. 323441)
1800 Century Park East, Suite 600
Los Angeles, CA 90067
Telephone:   (310) 712-6100
Facsimile:   (310) 712-6199
kcarter@kelleydrye.com
tboykins@kelleydrye.com

**KELLEY DRYE & WARREN LLP**
  Lauri A. Mazzuchetti (*Pro Hac Vice Forthcoming*)
One Jefferson Road, 2nd Floor
Parsippany, NJ 07054
Telephone: (973) 503-5900
Facsimile:   (973) 503-5950
lmazzuchetti@kelleydrye.com

*Attorneys for Defendant ActiveProspect, Inc.*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMANDA HILL, individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>ACTIVEPROSPECT, INC.<br><br>Defendant. | Case No.  5:20-cv-01351-JGB-KKx<br><br>[Assigned to Hon. Jesus G. Bernal]<br><br>**DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(1) and 12(b)(6)**<br><br>[Request for Judicial Notice and Proposed Order filed concurrently]<br><br>Hearing: November 9, 2020<br>Time:     9:00 a.m.<br>Location: Courtroom 1 |

CASE NO.  5:20-CV-01351-JGB-KK

DEFENDANT'S MOTION TO DISMISS PURSUANT
TO FED. R. CIV. P. 12(B)(1) AND 12(B)(6)

4838-3327-6877v.1

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on November 9, 2020, at 9:00 a.m., or as soon thereafter as this matter may be heard in Courtroom 1 of the United States District Court for the Central District of California, before the Honorable Jesus G. Bernal, located at 3470 Twelfth Street Riverside, California 92501-3801, defendant ActiveProspect, Inc. ("ActiveProspect") will and hereby does move this Court, pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), for an Order dismissing the Complaint and claims therein of Plaintiff Amanda Hill ("Plaintiff") with prejudice, for lack of standing and, in the alternative, for failure to state a claim upon which relief may be granted.

The basis for this Motion is that (1) Plaintiff has not sustained any injury and therefore lacks Article III standing; or, in the alternative, that (2) Plaintiff has failed to adequately plead a claim under Section 631 of the California Invasion of Privacy Act ("CIPA"); (3) Plaintiff has failed to adequately plead a claim under Section 632 of CIPA; (4) the use of TrustedForm was adequately disclosed to Plaintiff; and (5) Plaintiff's claims are time-barred. This Motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on September 28, 2020.

The Motion is based on this Notice of Motion and Motion; the accompanying Memorandum of Points and Authorities; the accompanying Request for Judicial Notice; the contemporaneously filed Declarations of Steven M. Rafferty ("Rafferty

//
//
//
//
//
//
//
//

1
DEFENDANT'S MOTION TO DISMISS PURSUANT
TO FED. R. CIV. P. 12(B)(1) AND 12(B)(6)

4838-3327-6877v.1

Decl.") and Larry Smith ("Smith Decl."); all other materials supporting the Motion or the Reply filed in support thereof; the pleadings on file with the Court, and such arguments and authorities as may be presented at or before the hearing.

DATED:  October 5, 2020     KELLEY DRYE & WARREN LLP
Lauri A. Mazzuchetti (*Pro Hac Vice Forthcoming*)
Kimberly C. Carter
Tahir L. Boykins

By _____
         Tahir L. Boykins
Attorneys for Defendant ActiveProspect, Inc.

DEFENDANT'S MOTION TO DISMISS PURSUANT
TO FED. R. CIV. P. 12(B)(1) AND 12(B)(6)

4838-3327-6877v.1

# TABLE OF CONTENTS

**I.** INTRODUCTION ................................................................................................ 1

**II.** FACTUAL BACKGROUND ............................................................................. 3

A.   ACTIVEPROSPECT'S TRUSTEDFORM SOFTWARE ........................... 3

B.   The *Hill v. Quicken Loans, Inc.* Lawsuit ............................................. 5

C.   Plaintiff's Allegations in the Instant Lawsuit ....................................... 6

**III.** ARGUMENT ................................................................................................... 9

A.   Plaintiff Lacks Article III Standing ...................................................... 9

B.   In the Alternative, the Complaint Fails to State a Claim .................. 11

1.   Plaintiff Fails to State a Valid Claim Under Section 631 ....... 11

(a)   Plaintiff Has Not Adequately Pled Interception While In Transit ......................................................... 12

(b)   Plaintiff Has Not Adequately Pled an Unauthorized Connection ............................................. 15

2.   Plaintiff Fails to State a Valid Claim under Section 632 ........ 15

(a)   Plaintiff Has Not Adequately Pled That ActiveProspect Recorded Confidential Information ..................................................................... 16

(b)   Plaintiff Has Not Adequately Pled That ActiveProspect Intended to Record Her Confidential Information ............................................. 18

3.   Plaintiff's Claims Are Time-Barred ....................................... 18

4.   Plaintiff's Claims Fail Because She Consented to the Alleged Activity ...................................................................... 20

**IV.** CONCLUSION .............................................................................................. 23

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Armstrong v. Allied Ins. Co.*,
   No. EDCV140424JGBSPX, 2014 WL 12591844 (C.D. Cal. Aug. 19, 2014) ................................................................................. 17

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .......................................................... 11

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .......................................................... 11

*Campbell v. Facebook Inc.*,
   77 F. Supp. 3d 836 (N.D. Cal. 2014) ............................................ 16

*Clark v. California Dept. of Forestry and Fire Protection*,
   212 F. Supp. 3d 808 (N.D. Cal. 2016) ........................................... 11

*Cline v. Reetz-Laiolo*,
   329 F. Supp. 3d 1000 (N.D. Cal. 2018) ......................................... 16

*DeBruyne v. Equitable Life Assur. Soc'y of U.S.*,
   920 F.2d 457 (7th Cir. 1990) ...................................................... 20

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*,
   528 U.S. 167 (2000) .............................................................. 9

*Garcia v. Enter. Holdings, Inc.*,
   78 F. Supp. 3d 1125 (N.D. Cal. 2015) ............................... 20, 21, 22

*In re Google Inc. Gmail Litig.*,
   2013 WL 5423918 (N.D. Cal. Sept. 26, 2013) ....................... 16, 17

*Hill v. Quicken Loans, Inc.*,
   No. 5:19-cv-00163-FMO-SP (C.D. Cal.) ...................................... 5

4838-3327-6877v.1

*Konop v. Hawaii Airlines, Inc.*,

302 F.3d 868 (9th Cir. 2002) ................................................. 12, 13

*Lujan v. Defenders of Wildlife*,

504 U.S. 555 (1992) ....................................................................... 9

*Maghen v. Quicken Loans Inc.*,

94 F. Supp. 3d 1141 (C.D. Cal. 2015), aff'd in part, dismissed in

part, 680 F. App'x 554 (9th Cir. 2017) ......................................... 21

*Mintz v. Mark Bartelstein & Assocs. Inc.*,

906 F. Supp. 2d 1017 (C.D. Cal. 2012) ........................................ 13

*Nei Contracting & Eng'g, Inc. v. Hanson Aggregates Pac. Sw., Inc.*,

No. 12-CV-01685-BAS(JLB), 2016 WL 4886933 (S.D. Cal. Sept.

15, 2016) .................................................................................. 10, 11

*NovelPoster v. Javitch Canfield Grp.*,

140 F. Supp. 3d 938 (N.D. Cal. 2014) ........................................... 13

*NYC Topanga, LLC v. Bank of Am.*,

2015 WL 4075844 (C.D. Cal. July 2, 2015) ................................. 20

*Spokeo v. Robins*,

136 S. Ct. 1540 (2016) ............................................................. 9, 10

*In re: Vizio, Inc. Consumer Privacy Litig.*,

238 F. Supp. 3d 1204 (C.D. Cal. 2017) ................................. 12, 14

*Warth v. Seldin*,

422 U.S. 490 (1975) ....................................................................... 9

*In re Yahoo Mail Litig.*,

7 F. Supp. 3d 1016 (N.D. Cal. 2014) ..................................... 17, 21

**California Cases**

*Fox v. Ethicon Endo-Surgery, Inc.*,

35 Cal. 4th 797 (2005) ................................................................. 19

III

DEFENDANT'S MOTION TO DISMISS PURSUANT
TO FED. R. CIV. P. 12(B)(1) AND 12(B)(6)

4838-3327-6877v.1

*Marich v. MGM/UA Telecommunications, Inc.*,

113 Cal. App. 4th 415, 7 Cal. Rptr. 3d 60 (2003) .................. 16, 18

*Montalti v. Catanzariti*,

191 Cal. App. 3d 96 ...................................................................... 18

*People v. Nakai*,

183 Cal. App. 4th 499 (Cal. Ct. App. 2010) ........................... 16, 17

*People v. Ratekin*,

212 Cal. App. 3d 1165 (1989) ...................................................... 12

**Other State Cases**

*Hill v. Lead Intelligence, Inc., d/b/a Jornaya*,

Case No.: 5:20-cv-01355 ................................................................ 1

*Hill v. Quicken Loans Inc.*,

Case No.: 19-cv-00163-FMO-SP..........................................*passim*

**Federal Statutes**

Fed. R. Civ. P. 12(b)(6)............................................................... 11, 14

Federal Wiretap Act ....................................................... 12, 13, 14, 21

Telephone Consumer Protection Act, 47 U.S.C.

§ 227.................................................................................*passim*

**California Statutes**

Cal. Pen. Code

§ 630........................................................................................ 10

§ 631.................................................................................*passim*

§ 632.................................................................................*passim*

IV

DEFENDANT'S MOTION TO DISMISS PURSUANT
TO FED. R. CIV. P. 12(B)(1) AND 12(B)(6)

4838-3327-6877v.1

# I. <u>INTRODUCTION</u>

ActiveProspect provides an industry-leading compliance tool, TrustedForm, that helps its clients eliminate fraud and meet the requirements of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") as well as other consumer protection statutes. The TrustedForm patented software is used on thousands of websites. It allows its users (typically owners and operators of consumer-facing websites) to create lead certification and compliance records, which validate a consumer's experience on a website through the use of a proprietary JavaScript that website owners/operators install. TrustedForm is designed to document website users' "prior express written consent" to receive certain communications, so that website owners can meet the substantive and recordkeeping requirements of the TCPA. Put differently, TrustedForm permits website owners to document what consumers view and how they interact with website request forms to help those companies document their compliance with the TCPA.

This lawsuit is one of three that Plaintiff Amanda Hill has filed in this Court relating to her October 2018 visit to a website, <u>YourVASurvey.info</u> (the "Website"), to obtain mortgage rate information. As alleged in her Complaint, during that visit, Plaintiff entered her contact information "for the purpose of obtaining an estimate on a home mortgage loan."[1] Quicken Loans, Inc. ("Quicken") contacted Plaintiff in response to her inquiry, and on January 29, 2019, Plaintiff filed a putative class action against Quicken alleging that it violated the TCPA as a result of that contact.[2] Because the Website owner had embedded the TrustedForm software on its Website as part of

---

[1] Pl. Compl., ¶¶ 15-21. Plaintiff disputes that she pressed the button on the final page of the intake form. *See id.*

[2] On the same day that it filed the instant suit, Plaintiff also sued Lead Intelligence, Inc. d/b/a Jornaya, another third party compliance software company used on the Website, in *Hill v. Lead Intelligence, Inc., d/b/a Jornaya*, Case No.: 5:20-cv-01355.

1
DEFENDANT'S MOTION TO DISMISS PURSUANT
TO FED. R. CIV. P. 12(B)(1) AND 12(B)(6)

4838-3327-6877v.1

its TCPA compliance program, Quicken offered witness testimony of the Website owner explaining its use of TrustedForm and to present the TrustedForm "certificate," which included a re-creation of Plaintiff's actions on the web form.[3]  This evidence contradicted Plaintiff's allegation in the *Quicken* case that she did not complete the subject web form.  This suit followed.

Here, Plaintiff asks this Court to improperly expand the California Invasion of Privacy Act ("CIPA") to convert a website owner's legitimate and responsible use of TrustedForm, a software designed to help websites bolster their legal compliance with federal and state privacy laws, into "wiretapping" and "eavesdropping."  But Plaintiff did not and cannot allege that she suffered any injury whatsoever as a result of the Website owner's use of ActiveProspect's compliance tool.  In fact, her own pleading confirms that she expected the Website owner to record the information that she entered on the Website form.  That the Website owner used a third party software to do so did not create any greater impact on Plaintiff's purported privacy interests. Plaintiff lacks standing under Article III, and the Complaint should be dismissed.

Moreover, even if she could establish standing, Plaintiff has failed to state a claim under CIPA on which relief could be granted.  Plaintiff alleges that ActiveProspect engaged in "wiretapping" in violation of CIPA's Section 631 and "eavesdropping" in violation of Section 632.  The Complaint fails to adequately plead either claim and demonstrates, on its face, that ActiveProspect could not have engaged in either type of violation.  Section 631, which prohibits "wiretapping," applies only to the ***unauthorized interception*** of an electronic communication ***while it is in transit***. As the Ninth Circuit has recognized, wiretapping laws rarely apply to internet

---

[3]  In *Hill v. Quicken Loans Inc.*, Case No.: 19-cv-00163-FMO-SP (the "*Quicken* case"), Quicken moved to compel arbitration, and the District Court denied that motion.  Quicken has appealed that ruling to the Court of Appeals for the Ninth Circuit, and that appeal remains pending. Should the Ninth Circuit reverse, Plaintiff's claims against ActiveProspect would be subject to arbitration under the same arbitration agreement.

2

DEFENDANT'S MOTION TO DISMISS PURSUANT<br>TO FED. R. CIV. P. 12(B)(1) AND 12(B)(6)

4838-3327-6877v.1

communications because it is highly unusual for such communications to be intercepted between the time they are sent and received.  Plaintiff has not plausibly alleged – nor can she plausibly allege – that ActiveProspect intercepted her communication during its transmission to the Website owner, or that ActiveProspect made an unauthorized connection to a transmission line.  Plaintiff's Section 632 claim is equally flawed.  That Section applies only to the ***intentional*** recording of "***confidential***" communications, and requires a plaintiff to have a "reasonable expectation of privacy" to assert a claim.  Courts in the Ninth Circuit, however, have uniformly concluded that Internet-based communications are not confidential.  Plaintiff's claims should, therefore, be dismissed as a matter of law on these grounds alone.

Finally, Plaintiff's claims should be dismissed on the additional grounds that Plaintiff's claims are time-barred and because Plaintiff was on notice of and assented to the Website owner's privacy policy, which clearly disclosed the use of third party service providers like ActiveProspect.

## II. FACTUAL BACKGROUND

### A.    ActiveProspect's TrustedForm Software

ActiveProspect developed the TrustedForm software for use on websites that offer an online form for consumers (website visitors) to request information.[4] (Rafferty Decl., ¶ 4.)    The TrustedForm software enables users (website owners/operators) to validate customer leads that are developed through these websites as legitimate (rather than fraudulent), and to assist businesses in complying with the TCPA and other consumer protection statutes.  (*Id.*, ¶ 5.)   By using TrustedForm, lead buyers ensure that online customer inquiries are legitimate

---

[4] ActiveProspect has been in business since 2004 and its TrustedForm product has been in use since 2010.  (Rafferty Decl., ¶ 3.)  The TrustedForm patented software is used on thousands of websites.  (*Id.*)

3

DEFENDANT'S MOTION TO DISMISS PURSUANT
TO FED. R. CIV. P. 12(B)(1) AND 12(B)(6)

4838-3327-6877v.1

expressions of consumer interest, and that the consumer consented to receive a text or call regarding the applicable product or service. (*Id.*, ¶ 6.) TrustedForm thus prevents fraudulent lead sellers from distributing phony sales leads and helps prevent consumers from receiving unwanted and illegal texts or calls. (*Id.*)

To use the software, a website owner/operator embeds a proprietary TrustedForm JavaScript on its website. (*Id.*, ¶ 7.) The TrustedForm JavaScript is available, without charge, for website owner/operators to download with or without an ActiveProspect account. (*Id.*) When a person (the website visitor) visits a website on which the TrustedForm script is embedded, the script runs and issues a certificate of authenticity demonstrating when and where the website visitor completed the web form, as well as what the website visitor saw when visiting the webpage. (*Id.*, ¶ 8.) This is important because, when claims arise, there are often questions about what a website visitor actually saw, and whether a web form prominently displayed legal disclosures and consent language when the website visitor competed a form requesting information. (*Id.*) The TrustedForm software also can track a website visitor's key strokes and mouse movements showing whether and how they completed a web form, and can also create a visual reproduction (often referred to as a "video replay") of a website visitor's interaction with a webpage. (*Id.*, ¶ 9.) The website owner/operator has the ability to flag any sensitive fields on its web form, which results in the TrustedForm software applying a cryptographic hash to the flagged fields (rather than recording the website visitor's actual entries). (*Id.*, ¶ 10.) When a TrustedForm video replay is viewed, the data in the flagged field is displayed only as a series of asterisks. (*Id.*) TrustedForm does not and cannot intercept communications in transit. (*Id.*, ¶ 11.)

ActiveProspect thus provides a third-party tool that website owners/operators can deploy when and where they choose. (*Id.*, ¶ 11.) Most, if not all, websites rely on such third-party services to operate (e.g., website hosting, web analytics, social

4

DEFENDANT'S MOTION TO DISMISS PURSUANT
TO FED. R. CIV. P. 12(B)(1) AND 12(B)(6)

4838-3327-6877v.1

media plug-ins). (*Id.*) Website owners/operators – not ActiveProspect – decide when, where, and how to use the TrustedForm tool, where specifically to install the TrustedForm JavaScript, what information to capture using the tool, and what notices and disclosures to provide to consumers. (*Id..*)

As is typical with the use of third-party tools that support a website's operation, a website owner/operator's use of TrustedForm is governed by a license agreement – in this case, ActiveProspect's TrustedForm End User License Agreement ("EULA"). (*Id.*, ¶ 12.) Under the EULA, the website owner/operator – and not ActiveProspect – owns the information and/or data collected on the website. (*Id.*, ¶ 13.) ActiveProspect is prohibited from sharing a website owner/operator's information and/or data with third parties, or from using, marketing, or otherwise distributing such information and/or data. (*Id.*) ActiveProspect strictly honors these obligations. (*Id.*)

**B.     The *Hill v. Quicken Loans, Inc.* Lawsuit**

On January 28, 2019, Plaintiff filed a putative class action lawsuit against Quicken Loans ("Quicken") in this Court captioned as *Hill v. Quicken Loans*, *Inc.*, No. 5:19-cv-00163-FMO-SP (C.D. Cal.), alleging that Quicken texted her without her prior express written consent in violation of the TCPA.[5] (Pl.'s Compl., ¶ 49.) Quicken presented evidence that the texts at issue were sent in response to Plaintiff's requests for mortgage loan information, including a request Plaintiff made in October 2018 through the website YourVASurvey.info (the "Website"). (RJN, Ex. 1 at ¶5.) Quicken argued that Plaintiff filled out a web form and agreed to certain terms and conditions on the Website, including an agreement to arbitrate. (*Id.*); *see also Hill v. Quicken Loans, Inc.*, 2020 WL 5358394 (C.D. Cal. Aug. 5, 2020). Plaintiff responded

---

[5] Plaintiff has incorporated by reference the pleadings and undisputed parts of the record from the *Quicken* case. (*See* Pl.'s Compl., ¶ 49.) This Court can and should take judicial notice of the relevant pleadings, declarations, and testimony in that case, including from Plaintiff Amanda Hill herself. *See* Request for Judicial Notice filed herewith.

DEFENDANT'S MOTION TO DISMISS PURSUANT
TO FED. R. CIV. P. 12(B)(1) AND 12(B)(6)

4838-3327-6877v.1

by submitting two sworn declarations in the *Quicken* litigation stating that:

> Although I may have partially filled in some of the non-personal intake information on the [Website], I did not complete all of the intake fields, and in particular, I did not input any of my personal contact information, did not click any "See my results" or "Click to See Your Free Results" buttons or other buttons on any such website, and did not ever receive notice of or agree to any purported terms of service available related to any such website. . . .

> [A]t no point have I ever inputted my telephone number or any of my personal contact information into the YourVASurvey or LowerMyBils.com website or any other website associated with Quicken, LMB, or any related companies. And I never pressed any button to submit the information that I did input into any form on any Quicken, LMB or related webpage.

(RJN, Ex. 2 and Ex. 3, at ¶ 3.) Plaintiff also provided sworn testimony that because she was "apprehensive about the website, [she] was careful not to put any personal information." (*Id.*, Ex. 4, Feb. 28, 2020 Tr. at 57:9 – 58:3.)

To rebut Plaintiff's testimony, Quicken submitted evidence from Suited Connector, LLC, the owner and operator of the Website (the "Website Owner"), to show Plaintiff's interactions with the applicable web form. (*Id.*, Ex. 4, Feb. 28, 2020 Tr. at 13:2-20.) The Website Owner's Chief Technology Officer testified that, for compliance purposes, it used ActiveProspect's TrustedForm software on its Website to document the interactions between Website visitors, like Plaintiff, and the web form on the Website. (*Id.*)

## C.     **Plaintiff's Allegations in the Instant Lawsuit**

On July 3, 2020, Plaintiff filed the instant lawsuit against ActiveProspect based on the information she contends that she learned from the *Quicken* case. (Pl.'s Compl., ¶ 49.) In her Complaint, Plaintiff alleges that while at her home in California, she used her mobile phone to visit the Website[6] to obtain a quote on a home mortgage

---

[6] Plaintiff alleges in her Complaint that the owner and operator of the Website is "third party LMB Mortgage Services, Inc., d/b/a LowernMyBills.com ("LMB"). (Pl.'s Compl., ¶15.) The record in *Quicken* made clear, however that third party Suited Connector LLC is kke Website Owner. (RJN, Ex. 4, Feb. 28, 2020 Tr. at 11:4-12.)

6

loan.  (Pl.'s Compl., ¶ 15.)  She does not – and cannot – allege that the Website required a password, username, or was otherwise shielded from general public access.  (*See id., generally.*)  Plaintiff claims she navigated through several pages of the Website, inputting "personal information and credit history information."[7]  (*Id.* ¶¶ 16, 18-19.)  Each time she continued to the next page of the Website, Plaintiff was required to click a button labeled "Next."  (*Id.* ¶ 17.)  Plaintiff claims that although she inputted the information requested on the various pages through which she navigated, clicking "Next" every time, she did not click the final submission button on the final page of the web form.  (*Id.* ¶¶ 19-21.)

On each and every page of the Website, the Website Owner's Privacy Policy was visible and hyperlinked.[8]  (Smith Decl., ¶ 4.)  The Privacy Policy stated in a section entitled "**How We Use and Share Information**," (bold in original) that

> The information collected is used to provide you with additional information regarding the services and/or products you have expressed interest in. This may include sharing your PII on to a third party who provides such services or products. . . 1. We share your PII and Non-PII information with third parties who will provide you with their opportunities, products or services. This includes your interests and preferences, so they may determine whether you might be interested in their products or services. 2. **We also share your PII and Non-PII information with companies and individuals we employ to perform technical or mechanical functions on our behalf, such as third parties who host our website, analyze our data, provide marketing assistance, process credit card payments, and provide customer service.**

(*Id.*, Ex. A at p. 2, emphasis added.)  As she clicked through the Website's various pages, Plaintiff was also presented with LMB's Privacy Policy, which contained a similar disclosure.  (*Id.*, Ex. C at p. 7 ("Tracking Technologies").)

---

For purposes of Plaintiff's claims and the instant motion, however, whether Suited Connector or LMB is the Website Owner is immaterial.

[7]   Notably, this allegation is at odds with the sworn declarations Plaintiff filed in the *Quicken* case.  (*Compare* Pl's Compl. ¶¶ 16-19 with RJN, Exs. 2 and 3 at ¶ 3.)

[8]   Plaintiff contended in the *Quicken* case that she did not click on the Privacy Policy hyperlink at the time of her October 2018 visit to the Website, but conceded that she could have.  (RJN, Ex. 4, Feb. 28, 2020 Tr. 91:4-14.)

7

DEFENDANT'S MOTION TO DISMISS PURSUANT
TO FED. R. CIV. P. 12(B)(1) AND 12(B)(6)

4838-3327-6877v.1

Plaintiff claims she "believed at all times during her visit to the [Website] that the confidential information she was inputting into the page would only be communicated to the [Website Owner]." (Pl.'s Compl., ¶ 22.) She alleges that she "believed that only [the Website Owner] and any other entities disclosed to her as recipients of her information by [the Website Owner] would be able to intercept, monitor, or record Plaintiff's personal information entered on the [Website.]" (*Id.* ¶ 24.) Plaintiff contends that she later learned, in the *Quicken* lawsuit, that ActiveProspect's TrustedForm had been installed on the Website. (*Id.* ¶ 49.)

While Plaintiff also learned in the *Quicken* lawsuit that the Website's use of the TrustedForm software was initiated by the Website Owner itself for the purpose of TCPA compliance, she omits this important fact from her Complaint and instead describes TrustedForm as "Spyware Apparatus." (*Id.* ¶ 33.) Plaintiff makes conclusory and unfounded allegations that TrustedForm is used for "wiretapping" (*id.* ¶ 33) and baldly asserts it was used to "intercept" Plaintiff's internet communications "while the communications were in transit." (*Id.* ¶ 74.) But Plaintiff does not plead any allegations as to how or when such communications were supposedly intercepted, or showing that such communications were actually intercepted while in transit from Plaintiff to the Website Owner. Plaintiff does not make any factual allegations that, even if proven, could support her conclusory allegations of wiretapping; instead, she merely parrots the statutory definition of "wiretapping." (*Id.* ¶ 74.) In addition, after testifying under oath in the *Quicken* suit that she was apprehensive about the Website and did not enter any personal information, she now alleges the opposite, that she actually did input such information and claims she had an "objectively reasonable expectation that [her] communications were confidential and were not being recorded." (*Id.* ¶ 87.) While Plaintiff makes conclusory allegations about the purported "loss of value" of her "personally identifiably information as a result of Defendant's monitoring, intercepting and recording of [her] confidential

8

4838-3327-6877v.1

communications on the [Website]," it is clear from the face of the Complaint, as well as the *Quicken* proceedings, that she suffered no injury at all.  (*Id.* ¶ 92; *see also* ¶ 44.) //

## III.  ARGUMENT

### A.  Plaintiff Lacks Article III Standing

Plaintiff's Complaint should be dismissed because Plaintiff has not and cannot allege the "concrete," "real harm" required by *Spokeo v. Robins*, 136 S. Ct. 1540 (2016).  To satisfy the "irreducible constitutional minimum" of Article III standing, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992), a plaintiff must show that she "has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical," *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 180 (2000).  Where a case is at the pleading stage, the plaintiff must "clearly" "allege facts" demonstrating each element.  *Warth v. Seldin*, 422 U.S. 490, 518 (1975) (emphasis added).  In *Spokeo*, the Supreme Court held that a plaintiff does not "automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right."  *Id.* at 1549.  "Article III standing requires a concrete injury even in the context of a statutory violation."  *Id.*

Here, Plaintiff has not alleged and cannot allege any harm whatsoever, let alone the concrete harm required by Article III, resulting from the Website's use of the TrustedForm software or any conduct allegedly engaged in by ActiveProspect.  Indeed, Plaintiff concedes in her Complaint that she voluntarily input, and believed that the Website Owner would capture and record, the information she entered in the public Website's web form.[9]  Plaintiff's claims are premised only on her alleged objection to the Website Owner's ***vendor*** (ActiveProspect) – rather than the Website

---

[9] Plaintiff testified in the *Quicken* suit that she did not input any "personal information."  (RJN, Ex. 4, Feb. 28, 2020 Tr. at 57:9 – 58:3.)

9

Owner itself – capturing or recording the information she provided. ActiveProspect did not secretly record private information for its own purposes; rather, its software's role was only to record information and create a compliance record *for the Website Owner*. Plaintiff cannot articulate any harm or injury that she suffered because the Website Owner used a reputable compliance vendor, rather than its own internal resources, to capture the information that Plaintiff concedes she voluntarily provided to the Website Owner.

In addition, ActiveProspect was and is contractually prohibited from using or sharing the information it collected from the Website for any purpose other than to create a record of the interaction for the Website Owner. Plaintiff does not allege that ActiveProspect acted otherwise. Plaintiff does not allege that ActiveProspect captured the information she entered for any other purpose or misused it in any way. Moreover, the very purpose of ActiveProspect's TrustedForm product is to support compliance with the TCPA, a federal privacy statute, and to prevent fraud in the online lead generation environment. The purpose of TrustedForm is fully consistent with the purpose of CIPA, which is also "to protect the right of privacy."[10]  Cal. Penal Code § 630; *see also Flanagan*, 41 P.3d at 581 (the "legislative purpose of the Privacy Act" is to "giv[e] greater protection to privacy interests"). Under these circumstances, Plaintiff was not and could not have been injured by the Website Owner's use of TrustedForm.

The court in *Nei Contracting*, interpreting *Spokeo*, rejected a CIPA claim for lack of standing because of similar defects. *Nei Contracting & Eng'g, Inc. v. Hanson Aggregates Pac. Sw., Inc.*, No. 12-CV-01685-BAS(JLB), 2016 WL 4886933, at *5 (S.D. Cal. Sept. 15, 2016). There, the Court found that even though the plaintiff's phone call was recorded and accessed by the defendant, the plaintiff did not tie any

---

[10] In addition, Plaintiff concedes that she could have read the Website's Privacy Policy that disclosed the use of service providers like TrustedForm. (RJN, Tr. 91:4-14.)

10

DEFENDANT'S MOTION TO DISMISS PURSUANT
TO FED. R. CIV. P. 12(B)(1) AND 12(B)(6)

4838-3327-6877v.1

injury to the violation. *Id.* ("Even if Hanson violated CIPA, the Court finds that NEI has not suffered a concrete or particularized injury by the violation."). As such, the *Nei* Court dismissed the plaintiff's CIPA claim for lack of Article III standing.

Here too the Court should dismiss Plaintiff's claims for lack of standing.

## B.   In the Alternative, the Complaint Fails to State a Claim

Rule 12(b)(6) requires dismissal where a complaint fails to allege sufficient facts "to state a claim to relief that is plausible on its face" and presents nothing more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim is facially plausible when a plaintiff pleads 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Clark v. California Dept. of Forestry and Fire Protection*, 212 F. Supp. 3d 808, 811 (N.D. Cal. 2016) (*quoting Ashcroft*, 556 U.S. at 678). "[C]ourts do not 'accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.'" *Id.* (*quoting In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008)). "And even where facts are accepted as true, 'a plaintiff may plead itself out of court' if [s]he 'plead[s] facts which establish that [s]he cannot prevail on h[er] . . . claim.'" *Id.* (*quoting Weisbusch v. Cnty. of Los Angeles*, 119 F. 3d 778, 783 n.1 (9th Cir. 1997)). Such is the case here.

Plaintiff fails to make plausible factual allegations that, even if proven, could support her claims under Sections 631 and 632. The Complaint, therefore, should be dismissed under Rule 12(b)(6). Moreover, because Plaintiff's pleading failures arise from an inability to plead a valid claim, any potential amendment to the Complaint would be futile, and the Court should dismiss Plaintiff's claims with prejudice.

### 1.   Plaintiff Fails to State a Valid Claim Under Section 631

Section 631 of CIPA makes it unlawful to use "any machine, instrument or

11
DEFENDANT'S MOTION TO DISMISS PURSUANT
TO FED. R. CIV. P. 12(B)(1) AND 12(B)(6)

4838-3327-6877v.1

contrivance" to intentionally intercept the content of a communication over any "telegraph or telephone wire, line, cable or instrument," or to read, attempt to read, or learn the "contents or meaning of any message, report, or communication *while the same is in transit* or passing over any wire, line or cable" without the consent of all parties to the communication.[11]   Cal. Penal Code § 631(a).   Plaintiff's Section 631 claim should be dismissed because: (1) she has not pled and cannot adequately plead that a communication was intercepted *while it was in transit*; and (2) even if she had adequately pled interception during transit (which she has not), Plaintiff has not and cannot plead that ActiveProspect made an *unauthorized connection* to a transmission line.

### (a)   Plaintiff Has Not Adequately Pled Interception While In Transit

It is well-settled, and reflected in the express statutory language of Section 631, that in order for a "wiretap" to occur, a communication must be "intercepted" while it is "in transit or passing over a wire, line or cable."   Cal. Penal Code § 631(a).   In interpreting Section 631 of CIPA, courts have generally construed it "as coextensive with the [federal] Wiretap Act."   *In re: Vizio, Inc. Consumer Privacy Litig.*, 238 F. Supp. 3d 1204 (C.D. Cal. 2017) (*citing Sunbelt Rentals, Inc. v. Victor*, 43 F. Supp. 3d 1026, 1033 (N.D. Cal. 2014); *NovelPoster v. Javitch Canfield Grp.*, 140 F. Supp. 3d 938, 954 (N.D. Cal. 2014)).

In *Konop v. Hawaii Airlines, Inc.*, the Ninth Circuit held that for a communication "to be 'intercepted' in violation of the federal Wiretap Act, it must be acquired during transmission."   302 F.3d 868, 878 (9th Cir. 2002).   The Court in *Konop* explained that "[t]his conclusion is consistent with the ordinary meaning of

---

[11] Although Plaintiff's Complaint suggests that the conduct prohibited by Sections 631 and 632 is the same or similar,   Section 631 "prohibits 'wiretapping,' i.e., intercepting communications by an unauthorized connection to the transmission line;" whereas Section 632 prohibits "eavesdropping" on confidential communications. *People v. Ratekin*, 212 Cal. App. 3d 1165, 1168 (1989)).

12
DEFENDANT'S MOTION TO DISMISS PURSUANT
TO FED. R. CIV. P. 12(B)(1) AND 12(B)(6)

4838-3327-6877v.1

'intercept,' which is 'to stop, seize, or interrupt in progress or course before arrival.'" *Id.* (*quoting* Webster's Ninth New Collegiate Dictionary 630 (1985)).

Courts applying Section 631 and the federal Wiretap Act have acknowledged that given the speed of modern internet communications, "the Wiretap Act's application to that form of electronic communication is undoubtedly limited." *NovelPoster*, 140 F. Supp. 3d at 954 (dismissing Wiretap Act and Section 631 claims related to email communications). This is because internet communications, including email, travel so quickly that there is only a narrow window during which an interception could occur. *See id.* For this reason, most claims involving allegations that a wiretap occurred with respect to internet communications fail as a matter of law; numerous courts have held that while emails may be improperly accessed either on the originating or receiving end, they are not typically intercepted *during transmission.* S*ee id.; see also, e.g.*, *Mintz v. Mark Bartelstein & Assocs. Inc.*, 906 F. Supp. 2d 1017, 1031 (C.D. Cal. 2012) (granting summary judgment to defendants where "[t]he undisputed facts [ ] show that Defendants did not access, disclose, or use any emails that had been acquired during transmission. Rather, the emails Defendants viewed were stored on Gmail."); *see also Yessin*, 686 F. Supp. 2d at 638 ("a qualifying 'intercept' under the [Wiretap Act] ... can only occur where an e-mail communication is accessed at some point between the time the communication is sent and the time it is received by the destination server"). For this reason, the Ninth Circuit has observed that "the existing statutory framework is ill-suited to address modern forms of communication." *Konop*, 302 F.3d at 874.

Here, Plaintiff has not plausibly alleged that ActiveProspect intercepted an electronic communication while it was in transit from Plaintiff to the Website Owner. Indeed, and demonstrating her misapprehension of a wiretap interception, Plaintiff uses the word "intercept" to describe the Website Owner's receipt of Plaintiff's communication to it. (Pl.'s Compl., ¶ 24 ("Plaintiff believed that only [the Website

13

DEFENDANT'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(1) AND 12(B)(6)

4838-3327-6877v.1

Owner] and any other entities disclosed to her as recipients by [the Website Owner[ would be able to *intercept,* monitor, or record Plaintiff's personal information entered on [the Website].") (emphasis added.))  Just as the Website Owner could not have "intercepted" Plaintiff's communications to the Website Owner, neither could ActiveProspect, because TrustedForm was deployed by the Website owner itself on the Website.  (Pl.'s Compl., ¶ 36.)  Further, under the Ninth Circuit precedent calling into question the applicability of wiretap laws to modern internet communications, it is simply not plausible that the TrustedForm script operated by intercepting Plaintiff's communication to the Website Owner while in transit.

Plaintiff's allegations here, which merely regurgitate the statutory definition of wiretapping, are insufficient to plead a valid claim under Section 631.  Indeed, Judge Staton recently granted a defendant's motion to dismiss under Rule 12(b)(6) where the plaintiffs similarly made only conclusory allegations of an interception in transit. *See In re Vizio*, 238 F. Supp. 3d at 1227-28.  There, in dismissing the plaintiffs' federal Wiretap Act and Section 631 claims, the Court held that:

> Plaintiffs have not articulated with sufficient clarity when Vizio supposedly intercepted their communications. Besides their conclusory allegation that Vizio intercepted their electronic communications "during transmission" (Compl. ¶ 128.),  Plaintiffs rely on a rather inscrutable graphic with no textual explanation (*id.* ¶ 52) and vague allegations about how Vizio's data collection occurs "in real time" (id. ¶¶ 39, 41–42, 49, 62).  While Plaintiffs need not prove their theory of interception on a motion to dismiss, Plaintiffs must provide fair notice to Defendants of when they believe Vizio intercepts their communications. A written explanation of Plaintiffs' theory of interception is particularly important in this case because the graphic Plaintiffs include in their Complaint suggests that Vizio transmits their data to its Inscape platform significantly after the data arrive at their Smart TVs. (*See id.* ¶ 52.)

*Id.*  In the instant Complaint, Plaintiff does even less than the plaintiffs in *Vizio* with respect to her Section 631 claim.   Plaintiff does not allege when or how ActiveProspect intercepted Plaintiff's communications, nor does she include any graphic attempting to illustrate the purported interception of a communication during transmission.  Instead, she recites the bare elements of the statute and nothing more.

14

4838-3327-6877v.1

This is insufficient.

Like the Court in *Vizio*, this Court should dismiss Plaintiff's Section 631 claim.

### (b)  Plaintiff Has Not Adequately Pled an Unauthorized Connection

Plaintiff's Section 631 claim also fails for the independent reason that the Complaint does not plausibly allege an "unauthorized connection to a transmission line" as required by the statute.  As the Court opined in *Guzman*, wiretapping under Section 631 requires "an unauthorized connection to a transmission line."  11 Cal. App. 5th at 519 fn. 7 (the "practice [of eavesdropping under section 632] is different from wiretapping, which is prohibited by section 631, insofar as it does not require an unauthorized connection to a transmission line, whereas wiretapping does.")  Here, ActiveProspect did not engage in any such unauthorized connection and Plaintiff does not allege otherwise.

Indeed, Plaintiff contends that she learned about the Website Owner's use of ActiveProspect during the *Quicken* case (the record of which Plaintiff has incorporated by reference into the Complaint), where she also learned that the Website Owner – not ActiveProspect – installed the TrustedForm software on its Website. (Pl.'s Compl., ¶ 35-36.)  Plaintiff does not, and cannot, allege that ActiveProspect hacked the Website or otherwise surreptitiously embedded its software on the Website without the full and complete knowledge and active participation of the Website Owner.  Accordingly, Plaintiff has not and cannot plead that ActiveProspect made an "unauthorized connection to a transmission line." [12]

### 2.  Plaintiff Fails to State a Valid Claim under Section 632

Section 632 provides, in relevant part, that "[e]very person who, intentionally

---

[12]    Casting ActiveProspect into the role of third-party eavesdropper would be the equivalent of holding a security camera company responsible for monitoring that occurs in its client's department store.  ActiveProspect provides a tool and service to business owners and Plaintiff's carefully worded Complaint is not inconsistent with that reality.

DEFENDANT'S MOTION TO DISMISS PURSUANT
TO FED. R. CIV. P. 12(B)(1) AND 12(B)(6)

4838-3327-6877v.1

and without the consent of all parties to a ***confidential*** communication, by means of any electronic . . . device . . . records the confidential communication" violates the statute.  Cal. Pen. Code § 632(a) (emphasis added).  Thus, in order to state a cause of action for violation of § 632, Plaintiff must plead facts showing that ActiveProspect "intentionally eavesdropp[ed]" on "a ***confidential*** communication by means of any electronic amplifying or recording device, without the consent of all parties."  *Marich v. MGM/UA Telecommunications, Inc.*, 113 Cal. App. 4th 415, 421, 7 Cal. Rptr. 3d 60, 63 (2003).  Here Plaintiff's Complaint fails to do so.

### (a)  Plaintiff Has Not Adequately Pled That ActiveProspect Recorded Confidential Information

Plaintiff's claim under Section 632 fails as a matter of law because she does not and cannot allege that ActiveProspect, or anyone else, recorded a confidential communication.  It is well-settled that Section 632 of CIPA only prohibits the nonconsensual recording of "confidential" communications.  *See, e.g., People v. Nakai*, 183 Cal. App. 4th 499, 517-18 (Cal. Ct. App. 2010).  As CIPA makes explicit, a "confidential communication" is limited to one where the "circumstances . . . reasonably indicate that any party to the communication desires it" be kept confidential and "excludes a communication" where circumstances indicate the "communication may be overheard or recorded."  Cal. Penal Code. § 632(c).  Unlike telephone or in-person communications, Internet communications lack a presumption of confidentiality as they are "by their very nature recorded on the computer of at least the recipient, who may then easily transmit the communication to anyone else who has access to the internet . . . ."  *In re Google Inc. Gmail Litig.*, 2013 WL 5423918, at *22-23 (N.D. Cal. Sept. 26, 2013).

Indeed, California courts have held that Internet-based communications are not confidential within the meaning of Section 632.  *See, e.g.*, *Cline v. Reetz-Laiolo*, 329 F. Supp. 3d 1000, 1051 (N.D. Cal. 2018) ("Internet-based communications are not 'confidential' within the meaning of section 632"); *Campbell v. Facebook Inc.*, 77 F.

16

DEFENDANT'S MOTION TO DISMISS PURSUANT
TO FED. R. CIV. P. 12(B)(1) AND 12(B)(6)

4838-3327-6877v.1

Supp. 3d 836, 849 (N.D. Cal. 2014) ("California appeals courts have generally found that Internet-based communications are not 'confidential' within the meaning of section 632...."); *In re Google Inc.*, No. 13-MD-02430-LHK, 2013 WL 5423918, at *23 (N.D. Cal. Sept. 26, 2013) (reviewing California Courts of Appeal decisions suggesting "internet-based communication cannot be confidential" and concluding that plaintiffs had "not plausibly alleged that they had an objectively reasonable expectation that their email communications were 'confidential' under the terms of section 632."); *People v. Nakai*, 183 Cal. App. 4th 499, 517-18 (Cal. Ct. App. 2010). "[T]here is no legally protected privacy interest and reasonable expectation of privacy" in the content Plaintiff entered on the Website web form. *See In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1041 (N.D. Cal. 2014) (citations omitted). And, Plaintiff herself testified in *Quicken* that she did not input private information into the Website because she was apprehensive about it – by her own account, she did not have a reasonable expectation of privacy. (Ex. 4, Feb. 28, 2020 Tr. at 57:9 – 58:3.) Because she had no reasonable expectation of privacy in the alleged communication at issue, she has no claim under Section 632.

Plaintiff's claim for invasion of privacy under Section 632 also fails because she concedes in her Complaint that she expected the Website Owner to collect and record the information she provided. (Pl.'s Compl., ¶¶ 22-23.) That the Website Owner used third-party software in aid of its own compliance and recordkeeping did not create any greater impact on Plaintiff's purported privacy interests than the Plaintiff's own conduct and interactions with the Website Owner. *See Armstrong v. Allied Ins. Co.*, No. EDCV140424JGBSPX, 2014 WL 12591844, at *6 (C.D. Cal. Aug. 19, 2014) (citing *Pioneer Electronics, Inc. v. Sup. Ct. of L.A.*, 40 Cal. 4th 360, 370 (2007) ("If the allegations 'show no reasonable expectation of privacy or an insubstantial impact on privacy interests, the question of invasion may be adjudicated as a matter of law.'")). Thus, Plaintiff does not and cannot state a valid claim against

DEFENDANT'S MOTION TO DISMISS PURSUANT
TO FED. R. CIV. P. 12(B)(1) AND 12(B)(6)

4838-3327-6877v.1

the provider of software used at the direction of and for the Website Owner, who she concedes did not invade her privacy.

Plaintiff's Section 632 claim, therefore, fails to state a valid claim and should be dismissed as a matter of law.

### (b)    Plaintiff Has Not Adequately Pled That ActiveProspect Intended to Record Her Confidential Information

Plaintiff also fails to adequately allege the intent element required to state a claim under Section 632.   Even if Plaintiff had set forth a valid claim for eavesdropping (which she does not), her Complaint would still fail because Section 632 prohibits only the *intentional* eavesdropping of a confidential communication. *Marich v. MGM/UA Telecommunications, Inc.*, 113 Cal. App. 4th 415, 421 (Cal. Ct. App. 2003).   "[T]he recording of a confidential conversation is intentional if the person using the recording equipment does so with the purpose or desire of recording a confidential conversation, or with the knowledge to a substantial certainty that [its] use of the equipment will result in the recordation of a confidential conversation." *Id.* 421 (internal quotation marks and citation omitted).

Plaintiff cannot allege, and cannot show, that ActiveProspect intentionally recorded her so-called confidential communication with the Website Owner. Although Plaintiff's Complaint implies (but certainly does not plead) that ActiveProspect randomly installs the TrustedForm software onto third-party websites for its own unstated purposes, (*see, e.g.,* Pl.'s Compl., ¶ 13), Plaintiff is well aware that it is actually the Website Owner who installed TrustedForm on the Website, with the intent of documenting consumer consent.  Thus, to the extent that there was a "recording," of Plaintiff's information, it was the Website Owner, not ActiveProspect, that engaged in such recording.   Accordingly, Plaintiff has not alleged that ActiveProspect had the requisite intent to record her purportedly confidential information under Section 632, and her claim should fail as a matter of law.

### 3.    Plaintiff's Claims Are Time-Barred

18

4838-3327-6877v.1

CIPA has a one-year statute of limitations. *Montalti v. Catanzariti*, 191 Cal. App. 3d 96, 98 & n.1(1987). All of Plaintiff's claims arise from her interaction with the Website in October 2018. (Compl. ¶ 15.). Because she did not file suit until 19 months later, in July 2020, Plaintiff's CIPA claims are time-barred.

Plaintiff alleges that the "delayed discovery" doctrine rule saves her claim, but she did not plead the allegations necessary to avail herself of that doctrine. (Compl. ¶¶ 49-51.) The delayed discovery doctrine required Plaintiff to "specifically plead facts to show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 808 (2005) (citation omitted). Plaintiff attempts to plead the first elements by alleging that she only discovered the basis for her claims in December 2019, through discovery in the *Quicken* Case. (Compl. ¶ 49.) But she fails to adequately plead that despite diligent investigation, she "could not have reasonably discovered facts supporting the cause of action within the applicable statute of limitations period." *Fox*, 35 Cal. 4th at 809. Under California law, plaintiffs "are charged with presumptive knowledge of an injury if they have 'information of circumstances to put them on inquiry,' or if they have 'the opportunity to obtain knowledge from sources open to their investigation." *Id*. at 807-08 (internal alterations omitted). "[S]uspicion of one or more of the elements of a cause of action, coupled with knowledge of any remaining elements, will generally trigger the statute of limitations period." *Id*. at 807.

Plaintiff claims she "could not reasonably have discovered the facts giving rise to the claims alleged herein – *i.e.*, Defendant's interception, monitoring, and recording of her confidential communications on the YourVASurvey.info website on October 10, 2018 – until she received documents and other materials that revealed such practices on December 9, 2019, in connection with the discovery process in the *Hill v. Quicken Loans, Inc.* litigation." (Pl.'s Compl. ¶ 50.) But Plaintiff does not dispute

19

DEFENDANT'S MOTION TO DISMISS PURSUANT
TO FED. R. CIV. P. 12(B)(1) AND 12(B)(6)

4838-3327-6877v.1

that she knew her information was collected and recorded by the Website Owner. (*Id.* at ¶¶ 22-24.)  And, the Website's Privacy Policy was available to her by hyperlink on the Website, and that if she read it, she would have learned of the Website's use of service providers like ActiveProspect. (Smith Decl., Exs. A-B (describing that technology was implemented on the Website and was "used in analyzing trends, administering the site, tracking users' movements around the site (including capture of visual snapshots of your activity on our site.)")  Further, in conducting diligence to bring the *Quicken* case, or while litigating the *Quicken* case, it is not plausible that neither Plaintiff nor her counsel reviewed the Website's Privacy Policy.  Plaintiff, thus, was on "inquiry notice" of her claims well before December 2019 and well before July 2019; her claims are therefore time-barred.  *See NYC Topanga, LLC v. Bank of Am.*, 2015 WL 4075844, at *6 (C.D. Cal. July 2, 2015) ("Plaintiff's failure to read the Agreement cannot support a claim for delayed discovery."); *DeBruyne v. Equitable Life Assur. Soc'y of U.S.*, 920 F.2d 457, 466 (7th Cir. 1990) ("[P]laintiffs cannot avoid the statute of limitations by possessing, but failing to read, the documents that would put them on inquiry notice.").  Plaintiff's Complaint should be dismissed on this additional basis.

### 4.    Plaintiff's Claims Fail Because She Consented to the Alleged Activity

Plaintiff's claims fail for the additional reason that she consented to the Website Owner's use of TrustedForm on the Website.  Sections 631 and 632 of CIPA prohibit certain activities only where no consent has been given.  For example, Section 631 holds liable anyone "who willfully ***and without the consent of all parties to the communication***, ***or in any unauthorized manner***, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state . . . ."  Cal. Pen. Code § 631.  Likewise, Section 632 states attributes liability to "[e]very person who, intentionally and ***without the***

20

4838-3327-6877v.1

*consent of all parties to a confidential communication*, by means of any electronic amplifying or recording device, eavesdrops upon or records the confidential communication . . . ." Cal. Pen. Code § 632. "Where lack of consent is an express element of a claim, as is the case here, it must be alleged in the complaint," and may be challenged on a motion to dismiss. *Garcia v. Enter. Holdings, Inc.*, 78 F. Supp. 3d 1125, 1136 (N.D. Cal. 2015).

While Plaintiff "denies having conferred [her] consent, the Court need not accept as true any allegations contradicted by 'matters properly subject to judicial notice or by exhibit' or 'that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.'" *Id.* Here, the Website's Privacy Policy was conspicuously hyperlinked at the bottom of each and every page of the Website visited by Plaintiff. (*See* Smith Decl., ¶¶ 4-6.) Through the Website's Privacy Policy, and LMB's Privacy Policy (which was also presented to her), Plaintiff was on notice that the Website used third party technologies like ActiveProspect. (*Id.,* Exs. A-B.); *see also, e.g., Maghen v. Quicken Loans Inc.*, 94 F. Supp. 3d 1141, 1145 (C.D. Cal. 2015), aff'd in part, dismissed in part, 680 F. App'x 554 (9th Cir. 2017); *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1030 (N.D. Cal. 2014) (granting Yahoo's motion to dismiss claim under Wiretap Act because email users agreed to terms of use and privacy policy). Because Plaintiff consented to the Website using Trusted Form, she has no valid claim under CIPA.

Plaintiff will undoubtedly claim that although the Privacy Policy was conspicuously hyperlinked on each page of the Website, she did not affirmatively assent to those terms. In fact, she inaccurately alleges that "[t]he [Website] lacked any clear or conspicuous disclosure language or disclaimer statement to notify Plaintiff in advance of Defendant's interception, monitoring, or recording of her communications while interacting on the website." (Pl.'s Compl. ¶ 29.) She further alleges that she did not press the "See my Results!" button on the last page of the web

21

DEFENDANT'S MOTION TO DISMISS PURSUANT
TO FED. R. CIV. P. 12(B)(1) AND 12(B)(6)

4838-3327-6877v.1

flow, but that even if she had pressed the button, she "had no reason to believe that any of her personal information would be intercepted, monitored, or recorded by Defendant or any other third-parties undisclosed to her by the [Website Owner]. Rather, even if she pressed the button (which she did not do), Plaintiff believed that only LMB and any other entities disclosed to her as recipients of her information by LMB would be able to intercept, monitor, or record Plaintiff's personal information entered on the YourVASurvey.info website." (*Id.* ¶¶ 23, 24.) As Plaintiff acknowledged during her sworn testimony in the *Quicken* case, the Website Owner's Privacy Policy was hyperlinked on that web pages she viewed, and each had robust disclosures regarding third party JavaScript and technologies. (RJN, Ex. 4, Feb. 28, 2020 Tr. 91:4-14.)

And while Plaintiff may claim that she did not affirmatively consent to those terms by clicking submit or otherwise indicating agreement, "that argument is germane to a clickwrap agreement, not a browsewrap agreement, which is at issue here. Unlike a clickwrap agreement, a browsewrap agreement does not require the user to manifest assent to the terms and conditions expressly; rather, a party instead gives his assent simply by using the website. Where a browsewrap agreement is at issue, the terms of the agreement are binding, even if the user did not actually review the agreement, provided that the user had actual knowledge of the agreement or the website put "a reasonably prudent user on notice of the terms of the contract." *Garcia*, 78 F. Supp. 3d 1125 at 1137. Here, Plaintiff was on notice that the Website Owner had a Privacy Policy, which disclosed that third party technologies were utilized to document interactions with the Website. On this additional ground, her CIPA claims fail as a matter of law.

//

//

22

DEFENDANT'S MOTION TO DISMISS PURSUANT
TO FED. R. CIV. P. 12(B)(1) AND 12(B)(6)

4838-3327-6877v.1

//

//

//

//

## IV.  **CONCLUSION**

For the foregoing reasons, ActiveProspect respectfully requests that this Court dismiss Plaintiff's Complaint in its entirety for lack of subject matter jurisdiction or as a matter of law.

DATED:  October 5, 2020      KELLEY DRYE & WARREN LLP
Lauri A. Mazzuchetti (*Pro Hac Vice Forthcoming*)
Kimberly C. Carter
Tahir L. Boykins

By _____
        Tahir L. Boykins
Attorneys for Defendant ActiveProspect, Inc.

DEFENDANT'S MOTION TO DISMISS PURSUANT
TO FED. R. CIV. P. 12(B)(1) AND 12(B)(6)

4838-3327-6877v.1