**KELLEY DRYE & WARREN LLP**
    Kimberly C. Carter (State Bar No. 221283)
    Tahir L. Boykins (State Bar No. 323441)
1800 Century Park East, Suite 600
Los Angeles, CA 90067
Telephone:   (310) 712-6100
Facsimile:   (310) 712-6199
kcarter@kelleydrye.com
tboykins@kelleydrye.com

**KELLEY DRYE & WARREN LLP**
    Lauri A. Mazzuchetti (*Pro Hac Vice*)
One Jefferson Road, 2nd Floor
Parsippany, NJ 07054
Telephone: (973) 503-5900
Facsimile:   (973) 503-5950
lmazzuchetti@kelleydrye.com

*Attorneys for Defendant ActiveProspect, Inc.*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMANDA HILL, individually and On Behalf of All Others Similarly Situated, | Case No.  5:20-cv-01351-JGB-KKx |
| | [Assigned to Hon. Jesus G. Bernal] |
| Plaintiff, | |
| v. | **DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(1) AND 12(b)(6)** |
| ACTIVEPROSPECT, INC.; LMB MORTGAGE SERVICES, INC., d/b/a LOWERMYBILLS.COM, | |
| | [Request for Judicial Notice, Declarations of Steven M. Rafferty and Larry Smith, and Proposed Order filed concurrently] |
| Defendants. | |
| | Hearing: February 8, 2021 |
| | Time:      9:00 a.m. |
| | Location: Courtroom 1 |

CASE NO.  5:20-CV-01351-JGB-KKX

DEFENDANT'S MOTION TO DISMISS PURSUANT
TO FED. R. CIV. P. 12(B)(1) AND 12(B)(6)

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on February 8, 2021, at 9:00 a.m., or as soon thereafter as this matter may be heard in Courtroom 1 of the United States District Court for the Central District of California, before the Honorable Jesus G. Bernal, located at 3470 Twelfth Street, Riverside, California 92501-3801, defendant ActiveProspect, Inc. ("ActiveProspect") will and hereby does move this Court, pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), for an Order dismissing the First Amended Complaint and claims therein of plaintiff Amanda Hill ("Plaintiff") with prejudice, for lack of standing and, in the alternative, for failure to state a claim upon which relief may be granted.

The basis for this Motion is that: (1) Plaintiff has not sustained any injury and therefore lacks Article III standing; or, in the alternative, that (2) Plaintiff has failed to adequately plead a claim under Section 631 of the California Invasion of Privacy Act ("CIPA"); (3) Plaintiff has failed to adequately plead a claim under Section 632 of CIPA; (4) Plaintiff has failed to adequately plead a claim under Section 635 of CIPA; (5) Plaintiff has failed to adequately plead an invasion of privacy; (6) Plaintiff has failed to adequately plead a claim for intrusion upon seclusion, additionally, the intrusion upon seclusion claim is duplicative of the invasion of privacy claim; (7) Plaintiff consented to use of the monitoring software on the Website; and (8) Plaintiff's CIPA claims are time-barred. This Motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on October 30, 2020.

The Motion is based on this Notice of Motion and Motion; the accompanying Memorandum of Points and Authorities; the accompanying Request for Judicial Notice; the contemporaneously filed Declarations of Steven M. Rafferty ("Rafferty Decl.") and Larry Smith ("Smith Decl."); all other materials supporting the Motion or the Reply filed in support thereof; the pleadings on file with the Court, and such arguments and authorities as may be presented at or before the hearing.

DEFENDANT'S MOTION TO DISMISS PURSUANT
TO FED. R. CIV. P. 12(B)(1) AND 12(B)(6)

DATED:  December 9, 2020

KELLEY DRYE & WARREN LLP
Lauri A. Mazzuchetti (*Pro Hac Vice*)
Kimberly C. Carter
Tahir L. Boykins

By      *Tahir Boykin*
      Tahir L. Boykins

Attorneys for Defendant ActiveProspect, Inc.

DEFENDANT'S MOTION TO DISMISS PURSUANT
TO FED. R. CIV. P. 12(B)(1) AND 12(B)(6)

# TABLE OF CONTENTS

**I.** INTRODUCTION.................................................................................................1

**II.** FACTUAL BACKGROUND ...........................................................................4

    **A.** ActiveProspect's TrustedForm Software...............................................4

    **B.** The Hill v. Quicken Loans, Inc. Lawsuit..............................................6

    **C.** Plaintiff's Allegations in the Instant Lawsuit .....................................8

**III.** ARGUMENT ....................................................................................................10

    **A.** Plaintiff Lacks Article III Standing....................................................10

    **B.** In the Alternative, the Complaint Fails to State a Claim...................13

        **1.** Plaintiff Fails to State a Valid Claim Under Section 631........13

            **(a)** Plaintiff Has Not Adequately Pled Interception While In Transit.........................................................14

            **(b)** Plaintiff Has Not Adequately Pled an Unauthorized Connection...................................................16

        **2.** Plaintiff Fails to State a Valid Claim under Section 632 ........17

            **(a)** Plaintiff Has Not Adequately Pled That ActiveProspect Recorded Confidential Information.....17

            **(b)** Plaintiff Has Not Adequately Pled That ActiveProspect Intended to Record Her Confidential Information .................................................................19

        **3.** Plaintiff Fails to State a Valid Claim Under Section 635........20

        **4.** Plaintiff Fails to State a Valid Claim for Invasion of Privacy Under the California Constitution ...........................21

            **(a)** Plaintiff Has Not Adequately Pled That She had a Reasonable Expectation of Privacy..............................22

            **(b)** Plaintiff Has Not Adequately Pled That ActiveProspect's conduct amounts to a serious invasion of a protected privacy interest .......................22

        **5.** Plaintiff Fails to State a Valid Claim for Intrusion Upon Seclusion..................................................................................24

        **6.** Plaintiff's CIPA Claims Are Time-Barred ...........................25

DEFENDANT'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(1) AND 12(B)(6)

7.    Plaintiff's Claims Also Fail Because She Voluntarily Engaged in the Alleged Activity ...............................................26

**IV.** CONCLUSION ...........................................................................................28

DEFENDANT'S MOTION TO DISMISS PURSUANT
TO FED. R. CIV. P. 12(B)(1) AND 12(B)(6)

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Armstrong v. Allied Ins. Co.*,
  2014 WL 12591844 (C.D. Cal. Aug. 19, 2014) ........................................... 19, 21

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ........................................................................ 13, 21

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ........................................................................ 13, 21

*Brodsky v. Apple, Inc.*,
  2019 WL 4141936 (N.D. Cal. Aug. 30, 2019) .................................................. 25

*Campbell v. Facebook Inc.*,
  77 F. Supp. 3d 836 (N.D. Cal. 2014) ............................................................ 18

*Clark v. California Dept. of Forestry and Fire Protection*,
  212 F. Supp. 3d 808 (N.D. Cal. 2016) ........................................................... 13

*Cline v. Reetz-Laiolo*,
  329 F. Supp. 3d 1000 (N.D. Cal. 2018) .......................................................... 18

*DeBruyne v. Equitable Life Assur. Soc'y of U.S.*,
  920 F.2d 457 (7th Cir. 1990) ................................................................... 26

*Flanagan v. Flanagan*,
  41 P.3d 575 (2002) ............................................................................. 12

*Fogelstrom v. Lamps Plus, Inc.*,
  195 Cal. App. 4th 986 (2011) ................................................................... 23

*Foster Poultry Farms v. Alkar-Rapidpak-MP Equipment, Inc.*,
  868 F. Supp. 2d 983 (E.D. Cal. 2012) ............................................................ 4

*Fox v. Ethicon Endo-Surgery, Inc.*,
  35 Cal. 4th 797 (2005) ..................................................................... 25, 26

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*,
  528 U.S. 167 (2000) ............................................................................ 11

DEFENDANT'S MOTION TO DISMISS PURSUANT
TO FED. R. CIV. P. 12(B)(1) AND 12(B)(6)

*Garcia v. Enter. Holdings, Inc.*,
   78 F. Supp. 3d 1125 (N.D. Cal. 2015)..........................................................27, 28

*In re Gilead Scis. Secs. Litig.*,
   536 F.3d 1049 (9th Cir. 2008).........................................................................13

*Global Policy Partners, LLC v. Yessin*,
   686 F. Supp. 2d 631 (E.D. Va. 2009).............................................................15

*Gonzales v. Uber Techs., Inc.*,
   305 F. Supp. 3d 1078 (N.D. Cal. 2018)....................................................27, 28

*In re Google Inc. Gmail Litig.*,
   2013 WL 5423918 (N.D. Cal. Sept. 26, 2013)................................................18

*In re Google, Inc. Privacy Policy Litig.*,
   58 F. Supp. 3d 968 (N.D. Cal. 2015)..............................................................24

*In re Google, Inc. Privacy Policy Litig.*,
   58 F. Supp. (N.D. Cal. 2014)...........................................................................24

*Hagan v. Khoja*,
   139 S. Ct. 1615 (2019)........................................................................................4

*Harris v. County of Orange*,
   682 F.3d 1126 (9th Cir. 2012)....................................................................6, 8, 9

*Hill v. Lead Intelligence, Inc., d/b/a Jornaya*,
   Case No.: 5:20-cv-01352......................................................................................1

*Hill v. Nat'l Collegiate Athletic Assn.*,
   7 Cal. 4th 1 (1994)......................................................................................22, 23

*Hill v. Quicken Loans, Inc.*,
   2020 WL 5358394 (C.D. Cal. Aug. 5, 2020) .....................................................7

*Hill v. Quicken Loans Inc.*,
   Case No.: 5:19-cv-00163-FMO-SP (C.D. Cal) ...........................................*passim*

*Ideal Aerosmith, Inc. v. Acutronic USA, Inc.*,
   No. 07-cv-1029, 2007 WL 439447 (E.D. Pa. Dec. 13, 2007)...........................21

*In re iPhone Application Litig.*,
   844 F. Supp. 2d 1040 (N.D. Cal. 2012)....................................................23, 24

DEFENDANT'S MOTION TO DISMISS PURSUANT
TO FED. R. CIV. P. 12(B)(1) AND 12(B)(6)

*Khoja v. Orexigen Therapuetics, Inc.*,
   899 F.3d 988 (9th Cir. 2018) ............................................................................... 4

*Konop v. Hawaii Airlines, Inc.*,
   302 F.3d 868, 878 (9th Cir. 2002) ................................................................. 14, 15

*Low v. LinkedIn*,
   900 F. Supp. 2d 1010 (N.D. Cal. 2012) ......................................................... 22, 23

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ........................................................................................... 10

*Maghen v. Quicken Loans Inc.*,
   94 F. Supp. 3d 1141 (C.D. Cal. 2015), *aff'd in part, dismissed in part*, 680 F. App'x 554 (9th Cir. 2017) ............................................................. 27

*Marich v. MGM/UA Telecommunications, Inc.*,
   113 Cal. App. 4th 415, 7 Cal. Rptr. 3d 60 (2003) .................................. 17, 19, 20

*McCarthy v. United States*,
   850 F.2d 558 (9th Cir. 1988) ............................................................................... 4

*Mintz v. Mark Bartelstein & Assocs. Inc.*,
   906 F. Supp. 2d 1017 (C.D. Cal. 2012) .............................................................. 15

*Mitchell v. Regional Serv. Corp.*,
   No. C 13-042212-JSW, 2014 WL 12607809 (N.D. Cal. Apr. 23, 2014) ................................................................................................................ 24

*Montalti v. Catanzariti*,
   191 Cal. App. 3d 96 (1987) ................................................................................ 25

*Nei Contracting & Eng'g, Inc. v. Hanson Aggregates Pac. Sw., Inc.*,
   No. 12-CV-01685-BAS(JLB), 2016 WL 4886933 (S.D. Cal. Sept. 15, 2016) ................................................................................................................ 12

*NovelPoster v. Javitch Canfield Grp.*,
   140 F. Supp. 3d 938 (N.D. Cal. 2014) ........................................................... 14, 15

*NYC Topanga, LLC v. Bank of Am.*,
   2015 WL 4075844 (C.D. Cal. July 2, 2015) ...................................................... 26

*People v. Guzman*,
   11 Cal. App. 5th 184 (2017), aff'd 8 Cal.5th 673 (2019) .................................. 16

v
DEFENDANT'S MOTION TO DISMISS PURSUANT
TO FED. R. CIV. P. 12(B)(1) AND 12(B)(6)

*People v. Nakai*,
   183 Cal. App. 4th 499 (Cal. Ct. App. 2010)........................................................18

*Phillips v. Archstone Simi Valley LLC*,
   No. CV155559DMGPLAX, 2016 WL 400100 (C.D. Cal. Feb. 1,
   2016) ....................................................................................................................24

*Pioneer Electronics, Inc. v. Sup. Ct. of L.A.*,
   40 Cal. 4th 360 (2007).................................................................................19, 22

*Ruiz v. Gap, Inc.*,
   540 F. Supp. 2d 1121 (N.D.Cal. 2008) *aff'd*, 380 Fed. App'x. 689
   (9th Cir. 2010) .....................................................................................................23

*Spokeo v. Robins*,
   136 S. Ct. 1540 (2016)........................................................................10, 11, 12

*Sunbelt Rentals, Inc. v. Victor*,
   43 F. Supp. 3d 1026 (N.D. Cal. 2014)................................................................14

*United States v. Corinthian Colleges*,
   655 F.3d 984 (9th Cir. 2011) ................................................................................9

*In re: Vizio, Inc. Consumer Privacy Litig.*,
   238 F. Supp. 3d 1204 (C.D. Cal. 2017).......................................................14, 16

*Warth v. Seldin*,
   422 U.S. 490 (1975) ...........................................................................................11

*Weisbusch v. Cnty. of Los Angeles*,
   119 F. 3d 778 (9th Cir. 1997) .............................................................................13

*In re Yahoo Mail Litig.*,
   7 F. Supp. 3d 1016 (N.D. Cal. 2014)...............................................18, 22, 27, 28

**Statutes**

Cal. Penal Code § 630 .............................................................................................12

Cal. Pen. Code § 631 ........................................................................................*passim*

Cal. Penal Code § 631(a) .........................................................................................14

Cal. Pen. Code § 632 ........................................................................................*passim*

DEFENDANT'S MOTION TO DISMISS PURSUANT
TO FED. R. CIV. P. 12(B)(1) AND 12(B)(6)

Cal. Pen. Code § 632(a) ................................................................................................. 17

Cal. Penal Code § 635(a) ............................................................................................... 20

**Other Authorities**

FRCP 12(b)(1) .................................................................................................................. 4

FRCP 12(b)(6) ......................................................................................................... *passim*

DEFENDANT'S MOTION TO DISMISS PURSUANT
TO FED. R. CIV. P. 12(B)(1) AND 12(B)(6)

# I. **INTRODUCTION**

ActiveProspect provides an industry-leading compliance tool, TrustedForm, that helps its clients eliminate fraud and meet the requirements of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), as well as other consumer protection statutes. The TrustedForm patented software is used on thousands of websites. It allows its users (typically owners and operators of consumer-facing websites) to create lead certification and compliance records, which validate a consumer's experience on a website through the use of a proprietary JavaScript that website owners/operators install. TrustedForm is designed to document website users' "prior express written consent" to receive certain communications, so that website owners can meet the substantive and recordkeeping requirements of the TCPA. Put differently, TrustedForm permits website owners to document what consumers view and how they interact with website request forms to help those companies document their compliance with the TCPA.

This lawsuit is one of three that Plaintiff Amanda Hill has filed in this Court relating to her October 2018 visit to a website, LMB.YourVASurvey.info (the "Website"), to obtain mortgage rate information. As alleged in her First Amended Complaint (Dkt. No. 26) ("FAC" or "Complaint"), during that visit, Plaintiff entered her contact information for the purpose of obtaining an estimate on a home mortgage loan.[1] Quicken Loans, Inc. ("Quicken") contacted Plaintiff in response to her inquiry, and on January 29, 2019, Plaintiff filed a putative class action against Quicken alleging that it violated the TCPA as a result of that contact.[2] Because the Website

---

[1] FAC, ¶¶ 19-25. Plaintiff disputes that she pressed the button on the final page of the intake form. *See id.*

[2] On the same day that it filed the instant suit, Plaintiff also sued Lead Intelligence, Inc. d/b/a Jornaya, another third party compliance software company used on the Website, in *Hill v. Lead Intelligence, Inc., d/b/a Jornaya*, Case No.: 5:20-cv-01352. Plaintiff has voluntarily dismissed the suit against Lead Intelligence, Inc.

DEFENDANT'S MOTION TO DISMISS PURSUANT
TO FED. R. CIV. P. 12(B)(1) AND 12(B)(6)

owner had embedded the TrustedForm software on its Website as part of its TCPA compliance program, Quicken offered witness testimony of the Website owner explaining its use of TrustedForm and to present the TrustedForm "certificate," which included a re-creation of Plaintiff's actions on the web form.[3] This evidence contradicted Plaintiff's allegation in the *Quicken* case that she did not complete the subject web form.

Here, Plaintiff asks this Court to improperly expand the California Invasion of Privacy Act ("CIPA"), and the common law, to convert a website owner's legitimate and responsible use of TrustedForm, a software designed to help websites bolster their legal compliance with federal and state privacy laws, into "wiretapping, ""eavesdropping" and an "invasion of privacy." But Plaintiff has not suffered any injury as a result of the Website owner's use of ActiveProspect's compliance tool. In fact, Plaintiff admits that she expected the Website owner to record the information that she entered on the Website form. That the Website owner used a third-party software to do so did not create any greater impact on Plaintiff's purported privacy interests. Thus, because Plaintiff lacks any cognizable injury (as reflected by her own admissions in the Complaint), she lacks standing under Article III, and the Complaint should be dismissed.

Moreover, even if she could establish standing, Plaintiff has failed to state a claim on which relief could be granted. Plaintiff alleges that ActiveProspect engaged in "wiretapping" in violation of CIPA's Section 631, "eavesdropping" in violation of Section 632, and that TrustedForm is a "device" that is primarily or exclusively intended for eavesdropping in violation of Section 635. Plaintiff further complains

---

[3] In *Hill v. Quicken Loans Inc.*, Case No.: 19-cv-00163-FMO-SP (the "*Quicken* case"), Quicken moved to compel arbitration, and the District Court denied that motion. Quicken has appealed that ruling to the Court of Appeals for the Ninth Circuit, and that appeal remains pending. Should the Ninth Circuit reverse, Plaintiff's claims against ActiveProspect would be subject to arbitration under the same arbitration agreement.

DEFENDANT'S MOTION TO DISMISS PURSUANT
TO FED. R. CIV. P. 12(B)(1) AND 12(B)(6)

that this conduct amounts to an invasion of her privacy and constitutes an intrusion upon her seclusion.  The Complaint, however, fails to adequately plead these claims and demonstrates, on its face, that ActiveProspect did not engage in any unlawful activity.

Plaintiff has not stated a valid CIPA claim.  Section 631, which prohibits "wiretapping," applies only to the *unauthorized interception* of an electronic communication *while it is in transit*.  As the Ninth Circuit Court of Appeals has recognized, wiretapping laws rarely apply to internet communications because it is highly unusual for such communications to be intercepted between the time they are sent and received.  Plaintiff has not plausibly alleged that ActiveProspect intercepted her communication *during its transmission* to the Website owner, nor has she alleged that ActiveProspect made an *unauthorized connection* to a transmission line.[4]  In similar circumstances, courts have granted motions under Rule 12(b)(6) finding it insufficient to claim that such activity was "contemporaneous[]" without providing any factual basis for that allegation.  Plaintiff's Section 632 and 635 claims are equally flawed.  Eavesdropping under Section 632 applies only to the *intentional* recording of "*confidential*" communications, and requires a plaintiff to have a "reasonable expectation of privacy" to assert a claim, while Section 635 limits the manufacture and sale of a "device" used to eavesdrop on the communication of another.  Courts in the Ninth Circuit, however, have uniformly concluded that Internet-based communications are not confidential and, thus, Plaintiff does not have a privacy interest in information she knowingly provided over the internet.  Plaintiff's CIPA claims should, therefore, be dismissed as a matter of law on these grounds alone.

[4]     ActiveProspect identified this deficiency in its motion to dismiss Plaintiff's initial Complaint.  Plaintiff's only attempt to correct that deficiency is to add the word "contemporaneously" twenty times in the FAC.  The addition of this word does not correct the fatal deficiency because Plaintiff still fails to allege an appropriate factual basis for her claims.

DEFENDANT'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(1) AND 12(B)(6)

Plaintiff's constitutional and common law claims fare no better because Plaintiff does not and cannot state a valid expectation of privacy where she concedes that she knowingly provided her information to the Website over the internet. Consistent with controlling precedent, Plaintiff's claims fail on their face.

Plaintiff's claims should be dismissed on the additional ground that Plaintiff was undisputedly on notice of, and assented to, the Website owner's privacy policy, which clearly and conspicuously disclosed the use of third party service providers like ActiveProspect. Finally, Plaintiff's CIPA claims fail because they are time-barred.

For each of these reasons, this Court should dismiss the Complaint.

## II.  FACTUAL BACKGROUND

### A.  ActiveProspect's TrustedForm Software[5]

ActiveProspect developed the TrustedForm software for use on websites that offer an online form for consumers (website visitors) to complete to request information.[6] (Rafferty Decl., ¶ 4.) The TrustedForm software enables users (website owners/operators) to validate customer leads that are developed through these websites as legitimate (rather than fraudulent leads), and to assist businesses in complying with the TCPA and other consumer protection statutes. (*Id.*, ¶ 5.) By

---

[5] ActiveProspect provides this factual background in support of its motion to dismiss pursuant to Rule 12(b)(1). These facts are not in dispute and the Court can and should consider them in deciding this Motion. *See McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988) ("when considering a motion to dismiss pursuant to Rule 12(b)(1) the district court is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction"). Separately, and even on Active Prospect's motion under Rule 12(b)(6), the Court can take judicial notice of ActiveProspect's patent, which contradicts Plaintiff's conclusory allegations. *See Khoja v. Orexigen Therapuetics, Inc.*, 899 F.3d 988, 1001 (9th Cir. 2018), cert. denied sub nom. *Hagan v. Khoja*, 139 S. Ct. 1615 (2019) ("The [patent] application is [] verifiable with certainty, and of the same type of other governmental documents which courts have judicially noticed.") (internal citations omitted); *Foster Poultry Farms v. Alkar-Rapidpak-MP Equipment, Inc.*, 868 F. Supp. 2d 983, 990 (E.D. Cal. 2012) ("[c]ourts have [] found the contents of patents to be the appropriate subject of judicial notice") (collecting cases).

[6] ActiveProspect has been in business since 2004 and its TrustedForm product has been in use since 2010. (Rafferty Decl., ¶ 3.) The TrustedForm patented software is used on thousands of websites. (*Id.*)

DEFENDANT'S MOTION TO DISMISS PURSUANT
TO FED. R. CIV. P. 12(B)(1) AND 12(B)(6)

using TrustedForm, lead buyers hope to ensure that online customer inquiries are legitimate expressions of consumer interest, and that the consumer consented to receive a text or call regarding the product or service at issue. (*Id.*, ¶ 6.) TrustedForm thus seeks to prevent fraudulent lead sellers from distributing phony sales leads and helps prevent consumers from receiving unwanted and illegal texts or calls. (*Id.*)

To use the software, a website owner/operator embeds a proprietary TrustedForm JavaScript on its website. (*Id.*, ¶ 7.) The TrustedForm JavaScript is available, without charge, for website owners/operators to download with or without having an ActiveProspect account. (*Id.*) When a person (the website visitor) visits a website on which the TrustedForm script is embedded, the script runs and issues a certificate of authenticity demonstrating when and where the website visitor completed the web form, as well as what the website visitor saw when visiting the webpage. (*Id.*, ¶ 8.) This is important because, when TCPA claims are asserted, questions often arise about what a website visitor actually saw, and whether a web form prominently displayed legal disclosures and consent language when the website visitor competed a form requesting information. (*Id.*) The TrustedForm software also can track a website visitor's key strokes and mouse movements showing whether and how they completed a web form, and can create a visual reproduction (often referred to as a "video replay") of a website visitor's interaction with a webpage. (*Id.*, ¶ 9.) The website owner/operator has the ability to flag any sensitive fields on its web form, which results in the TrustedForm software applying a cryptographic hash to the flagged fields (rather than recording the website visitor's actual entries). (*Id.*, ¶ 10.) When a TrustedForm video replay is viewed, the data in the flagged field is displayed only as a series of asterisks. (*Id.*) TrustedForm does not and cannot intercept communications in transit. (*Id.*, ¶ 11); (*see also* Request for Judicial Notice ("RJN") filed herewith, Ex. 5 at Abstract) ("When the visitor submits the form, the lead generator sends the form data, which includes the entered lead information and the

DEFENDANT'S MOTION TO DISMISS PURSUANT
TO FED. R. CIV. P. 12(B)(1) AND 12(B)(6)

reference key received from the verification server").

ActiveProspect provides a third-party tool that website owners/operators can deploy when and where they choose. (Rafferty Decl., ¶ 11.) Most, if not all, websites rely on such third-party services to operate (e.g., website hosting, web analytics, social media plug-ins). (*Id.*) Website owners/operators – not ActiveProspect – decide when to use the TrustedForm tool, where specifically to install the TrustedForm JavaScript, what information to capture using the tool, and what notices and disclosures to provide to website visitors. (*Id.*)

As is typical with the use of third-party tools that support a website's operation, a website owner/operator's use of TrustedForm is governed by a license agreement – in this case, ActiveProspect's TrustedForm End User License Agreement ("EULA"). (*Id.*, ¶ 12.) Under the EULA, the website owner/operator – and not ActiveProspect – owns the information and/or data collected on the website. (*Id.*, ¶ 13.) ActiveProspect is prohibited from sharing a website owner/operator's information and/or data with third parties, or from using, marketing, or otherwise distributing such information and/or data. (*Id.*) ActiveProspect strictly honors these obligations. (*Id.*)

### B.     The Hill v. Quicken Loans, Inc. Lawsuit

On January 28, 2019, Plaintiff filed a putative class action lawsuit against Quicken in this Court captioned as *Hill v. Quicken Loans*, *Inc.*, No. 5:19-cv-00163-FMO-SP (C.D. Cal.), alleging that Quicken texted her without her prior express written consent in violation of the TCPA.[7] (FAC ¶ 53.) Quicken presented evidence

---

[7] Plaintiff has incorporated by reference the pleadings and undisputed parts of the record from the *Quicken* case. (*See* FAC, ¶¶ 53, 54.) This Court can and should take judicial notice of the relevant pleadings, declarations, and testimony in that case, including from Plaintiff Amanda Hill herself. *See* Request for Judicial Notice filed herewith; *Harris v. County of Orange*, 682 F.3d 1126, 1131-32 (9th Cir. 2012) (citation omitted) (the Court "may take judicial notice of undisputed matters of public record, including documents on file in federal or state courts.") "Moreover, documents not attached to a complaint may be considered if no party questions their authenticity and the complaint relies on those documents." *Id.* at 1132. Here, Plaintiff's Complaint references and relies on the *Quicken* case.

DEFENDANT'S MOTION TO DISMISS PURSUANT
TO FED. R. CIV. P. 12(B)(1) AND 12(B)(6)

that the texts at issue were sent in response to Plaintiff's requests for mortgage loan information, including a request Plaintiff made in October 2018 through the Website. (RJN, Ex. 1 at ¶ 5.) Quicken argued that Plaintiff filled out a web form and agreed to certain terms and conditions on the Website, including an agreement to arbitrate. (*Id.*); *see also Hill v. Quicken Loans, Inc.*, 2020 WL 5358394 (C.D. Cal. Aug. 5, 2020). Plaintiff responded by submitting two sworn declarations in the *Quicken* litigation stating that:

> Although I may have partially filled in some of the non-personal intake information on the [Website], I did not complete all of the intake fields, and in particular, I did not input any of my personal contact information, did not click any "See my results" or "Click to See Your Free Results" buttons or other buttons on any such website, and did not ever receive notice of or agree to any purported terms of service available related to any such website. . . .

> [A]t no point have I ever inputted my telephone number or any of my personal contact information into the YourVASurvey or LowerMyBils.com website or any other website associated with Quicken, LMB, or any related companies. And I never pressed any button to submit the information that I did input into any form on any Quicken, LMB or related webpage.

(RJN, Ex. 2 and Ex. 3, at ¶ 3.) Plaintiff also provided sworn testimony that because she was "apprehensive about the website, [she] was careful not to put any personal information." (*Id.*, Ex. 4, Feb. 28, 2020 Tr. at 57:9 – 58:3.)

To rebut Plaintiff's testimony, Quicken submitted evidence from Suited Connector, LLC[8], the owner and operator of the Website (the "Website Owner"), to show Plaintiff's interactions with the applicable web form. (*Id.*, Ex. 4, Feb. 28, 2020 Tr. at 13:2-20.) The Website Owner's Chief Technology Officer testified that, for

---

[8] Plaintiff alleges in her FAC that the owner and operator of the Website is LMB Mortgage Services, Inc., d/b/a LowernMyBills.com ("LMB"). (FAC, ¶19.) The record in *Quicken* confirms, however that non-party Suited Connector LLC is the Website Owner. (RJN, Ex. 4, Feb. 28, 2020 Tr. at 11:4-12.) For purposes of Plaintiff's claims against ActiveProspect and the instant motion, however, it is immaterial whether Suited Connector or LMB is the website owner. ActiveProspect raised this error in its Motion to Dismiss the initial Complaint and Plaintiff did not correct the error, but now names LMB as a defendant based on the allegation that LMB is the website owner.

7

compliance purposes, it used ActiveProspect's TrustedForm software on its Website to document the interactions between Website visitors, like Plaintiff, and the web form on the Website. (*Id.*)

## C. Plaintiff's Allegations in the Instant Lawsuit

On July 3, 2020, Plaintiff filed the instant lawsuit against ActiveProspect based on the information she contends that she learned from the *Quicken* case. (Dkt. No. 1, ¶ 49.) Instead of responding to ActiveProspect's Motion to Dismiss her initial Complaint, Plaintiff filed the FAC on October 26, 2020. (Dkt. No. 26.) In her FAC, Plaintiff alleges that while at her home in California, she used her mobile phone to visit the Website to obtain a quote on a home mortgage loan. (FAC., ¶ 19.) She does not – and cannot – allege that the Website required a password, username, or was otherwise shielded from general public access. (*See id., generally.*) Plaintiff claims she navigated through several pages of the Website, inputting "personal information and credit history information."[9] (*Id.* ¶¶ 20, 22-23.) Each time she continued to the next page of the Website, Plaintiff was required to click a button to continue to the next page. (*Id.* ¶ 21.) Plaintiff claims that although she inputted the information requested on the various pages through which she navigated, clicking "next" every time, she did not click the submission button on the final page of the web form. (*Id.* ¶¶ 23-25.)

On each and every page of the Website, the Website Owner's Privacy Policy was visible and hyperlinked.[10] (Smith Decl., ¶ 4.) The Privacy Policy stated in a

---

[9] Notably, this allegation is at odds with the sworn declarations Plaintiff filed in the *Quicken* case. (*Compare* FAC, ¶¶ 20-23 with RJN, Exs. 2 and 3 at ¶ 3.)

[10] Plaintiff contended in the *Quicken* case that she did not click on the Privacy Policy hyperlink at the time of her October 2018 visit to the Website, but conceded that she could have. (RJN, Ex. 4, Feb. 28, 2020 Tr. 91:4-14.) This Court may consider the Website, including the Privacy Policy, on this Motion because it may take judicial notice of Plaintiff's testimony in the *Quicken* case and because Plaintiff incorporates the Website into her Complaint and it is central to her claims. *See, e.g.,* FAC, ¶¶ 9, 16, 19-26, 33 (incorporating Website); *Harris*, 682 F.3d at1131-32 (9th Cir. 2012)

DEFENDANT'S MOTION TO DISMISS PURSUANT
TO FED. R. CIV. P. 12(B)(1) AND 12(B)(6)

section entitled "**How We Use and Share Information**," (bold in original) that

> The information collected is used to provide you with additional information regarding the services and/or products you have expressed interest in. This may include sharing your PII on to a third party who provides such services or products. . . 1. We share your PII and Non-PII information with third parties who will provide you with their opportunities, products or services. This includes your interests and preferences, so they may determine whether you might be interested in their products or services. 2. **We also share your PII and Non-PII information with companies and individuals we employ to perform technical or mechanical functions on our behalf, such as third parties who host our website, analyze our data, provide marketing assistance, process credit card payments, and provide customer service.**

(*Id.*, Ex. A at p. 2, emphasis added.)  As she clicked through the Website's various pages, Plaintiff was also presented with LMB's Privacy Policy, which contained a similar disclosure.  (*Id.*, Ex. C at p. 7 ("Tracking Technologies").)

Plaintiff claims she "believed at all times during her visit to the [Website] that the confidential information she was inputting into the page would only be communicated to the [Website Owner]."  (FAC, ¶ 26.)  She alleges that she "believed that only [the Website Owner] and any other entities disclosed to her as recipients of her information by [the Website Owner] would be able to intercept, monitor, or record Plaintiff's personal information entered on the [Website.]"  (*Id.* ¶ 28.)  Plaintiff contends that she later learned, in the *Quicken* lawsuit, that ActiveProspect's TrustedForm had been installed on the Website.  (*Id.* ¶ 53.)

While Plaintiff also learned in the *Quicken* lawsuit that the Website Owner's use of the TrustedForm software was initiated by the Website Owner itself for the purpose of TCPA compliance, she omits this important fact from the FAC and instead

---

(citation omitted) (the Court "may take judicial notice of undisputed matters of public record, including documents on file in federal or state courts"); *id.* at 1132 ("Moreover, documents not attached to a complaint may be considered if no party questions their authenticity and the complaint relies on those documents"); *United States v. Corinthian Colleges*, 655 F.3d 984, 999 (9th Cir. 2011) (the court may consider unattached evidence on a Rule 12(b)(6) motion to dismiss if the complaint refers to the document, the document is central to plaintiff's claim, and no party questions the authenticity of the document).

9

describes TrustedForm as "Spyware Apparatus." (*Id.* ¶ 37.) Plaintiff makes conclusory and unfounded allegations that TrustedForm is used for "wiretapping" (*id.*) and baldly asserts it was used to "intercept" Plaintiff's internet communications "while the communications were in transit." (*Id.* ¶ 79.) But Plaintiff does not plausibly plead how or when such communications were supposedly intercepted, nor does she plead any facts that show that such communications were actually intercepted while in transit from Plaintiff to the Website Owner. They were not, as the TrustedForm patent makes clear. (*See generally* RJN Ex. 5.) Plaintiff does not make any factual allegations that, even if proven, could support her conclusory allegations of wiretapping; instead, she merely parrots the statutory definition of "wiretapping." (FAC, ¶ 78.)

In addition, after testifying under oath in the *Quicken* suit that she was apprehensive about the Website and did not enter any personal information, she now alleges the opposite, that she actually did input such information and claims she had an "objectively reasonable expectation that [her] communications were confidential and were not being recorded." (*Id.* ¶ 92.) While Plaintiff makes conclusory allegations about the purported "loss of value" of her "personally identifiable information as a result of Defendant's monitoring, intercepting and recording of [her] confidential communications on the [Website]," it is evident from the face of the Complaint, as well as the *Quicken* proceedings, that she suffered no injury at all. (*Id.* ¶ 97; *see also* ¶ 48.)

## III. ARGUMENT

### A. Plaintiff Lacks Article III Standing

The Complaint should be dismissed in its entirety because Plaintiff has not and cannot allege the "concrete," "real harm" required by *Spokeo v. Robins*, 136 S. Ct. 1540 (2016). To satisfy the "irreducible constitutional minimum" of Article III standing, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992), a plaintiff must

10

show that she "has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical," *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 180 (2000). Where a case is at the pleading stage, the plaintiff must clearly allege facts demonstrating each element. *Warth v. Seldin*, 422 U.S. 490, 518 (1975). In *Spokeo*, the Supreme Court held that a plaintiff does not "automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id.* at 1549. "Article III standing requires a concrete injury even in the context of a statutory violation." *Id.*

Here, Plaintiff has not alleged and cannot allege any harm whatsoever, let alone the concrete harm required by Article III, resulting from the Website's use of the TrustedForm software or any conduct allegedly engaged in by ActiveProspect. Rather, Plaintiff admits in her own pleading that she voluntarily input, and believed that the Website Owner would capture and record, the information she entered in the public Website's web form.[11] (FAC ¶ 26.) Plaintiff's claims are premised only on her alleged objection to software provided by the Website Owner's **vendor** (ActiveProspect) being used to capture or record information she provided. ActiveProspect did not secretly record private information for its own purposes; rather, its software's role was only to record information and create a compliance record *for the Website Owner*. Plaintiff cannot articulate any harm or injury that she suffered because the Website Owner used a reputable, third-party tool to capture the information that Plaintiff admits she voluntarily provided to the Website Owner. (FAC ¶¶ 20-26.) By Plaintiff's account, if the Website Owner had created its own script to record her interactions with the Website, she would have no claim.

In addition, ActiveProspect was and is contractually prohibited from using or

---

[11] Plaintiff testified in the *Quicken* suit that she did not input any "personal information." (RJN, Ex. 4, Feb. 28, 2020 Tr. at 57:9 – 58:3.)

11

DEFENDANT'S MOTION TO DISMISS PURSUANT
TO FED. R. CIV. P. 12(B)(1) AND 12(B)(6)

sharing information it collected from the Website for any purpose other than to create a record of the interaction for the Website Owner.  (Rafferty Decl. at ¶ 13.)  Plaintiff does not and cannot allege that ActiveProspect acted otherwise.  Indeed, Plaintiff does not and cannot allege that ActiveProspect captured the information she entered for any other purpose (other than for the Website Owner) or misused it in any way.  Moreover, the very purpose of ActiveProspect's TrustedForm product is to support compliance with the TCPA, a federal privacy statute, and to prevent fraud in the online lead generation environment.  Thus, the purpose of TrustedForm is fully consistent with the purpose of CIPA, which is also "to protect the right of privacy."[12] Cal. Penal Code § 630; *see also Flanagan v. Flanagan*, 41 P.3d 575, 581 (2002) (the "legislative purpose of the Privacy Act" is to "giv[e] greater protection to privacy interests").  Under these circumstances, Plaintiff was not and could not have been injured by ActiveProspect.

The court in *Nei Contracting*, interpreting *Spokeo*, rejected a CIPA claim for lack of standing because of similar defects.  *Nei Contracting & Eng'g, Inc. v. Hanson Aggregates Pac. Sw., Inc.*, No. 12-CV-01685-BAS(JLB), 2016 WL 4886933, at *5 (S.D. Cal. Sept. 15, 2016).  There, the Court found that even though the plaintiff's phone call was recorded and accessed by the defendant, the plaintiff did not tie any injury to the violation.  *Id.* ("Even if [the defendant] violated CIPA, the Court finds that [the plaintiff] has not suffered a concrete or particularized injury by the violation.").  As such, the *Nei* Court dismissed the plaintiff's CIPA claim for lack of Article III standing. *Id.* Here too the Court should dismiss Plaintiff's Complaint for lack of standing.[13]

---

[12] In addition, Plaintiff concedes that she could have read the Website's Privacy Policy that disclosed the use of service providers like TrustedForm.  (RJN, Tr. 91:4-14.)

[13] To the extent Plaintiff argues that a bare statutory violation provides standing for her CIPA claims (which it does not), that will not save her invasion of privacy and inclusion upon seclusion counts.  "[A] plaintiff must demonstrate standing for each

12

DEFENDANT'S MOTION TO DISMISS PURSUANT
TO FED. R. CIV. P. 12(B)(1) AND 12(B)(6)

**B.** **In the Alternative, the Complaint Fails to State a Claim**

Rule 12(b)(6) requires dismissal where a complaint fails to allege sufficient facts "to state a claim to relief that is plausible on its face" and presents nothing more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim is facially plausible when a plaintiff pleads 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Clark v. California Dept. of Forestry and Fire Protection*, 212 F. Supp. 3d 808, 811 (N.D. Cal. 2016) (*quoting Ashcroft*, 556 U.S. at 678). "[C]ourts do not 'accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.'" *Id.* (*quoting In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008)). "And even where facts are accepted as true, 'a plaintiff may plead itself out of court' if [s]he 'plead[s] facts which establish that [s]he cannot prevail on h[er] . . . claim.'" *Id.* (*quoting Weisbusch v. Cnty. of Los Angeles*, 119 F. 3d 778, 783 n.1 (9th Cir. 1997)). Such is the case here.

Plaintiff has not and cannot set forth plausible factual allegations that, even if true, could support her claims. Thus, Plaintiff's claims should be dismissed with prejudice.

**1.** **Plaintiff Fails to State a Valid Claim Under Section 631**

Section 631 of CIPA makes it unlawful to use "any machine, instrument or contrivance" to intentionally intercept the content of a communication over any "telegraph or telephone wire, line, cable or instrument," or to read, attempt to read, or learn the "contents or meaning of any message, report, or communication ***while the***

claim he seeks to press." *Davis v. Federal Election Com;n*, 554 U.S. 724, 734 (2008) (quotation omitted). Thus, at a minimum, Plaintiff's Fourth and Fifth Causes of Action must be dismissed for lack of standing.

*same is in transit* or passing over any wire, line or cable" without the consent of all parties to the communication. Cal. Penal Code § 631(a). Plaintiff's Section 631 claim should be dismissed because: (1) she cannot adequately plead that a communication was intercepted *while it was in transit*; and (2) even if she had adequately pled interception during transit (which she has not), Plaintiff has not and cannot plead that ActiveProspect made an *unauthorized connection* to a transmission line.

### (a) Plaintiff Has Not Adequately Pled Interception While In Transit

In order for a "wiretap" to occur, a communication must be "intercepted" while it is "in transit or passing over a wire, line or cable." Cal. Penal Code § 631(a). In interpreting Section 631, courts have generally construed it "as coextensive with the [federal] Wiretap Act." *In re: Vizio, Inc. Consumer Privacy Litig.*, 238 F. Supp. 3d 1204, 1228 n. 9 (C.D. Cal. 2017) (*citing Sunbelt Rentals, Inc. v. Victor*, 43 F. Supp. 3d 1026, 1033 (N.D. Cal. 2014); *NovelPoster v. Javitch Canfield Grp.*, 140 F. Supp. 3d 938, 954 (N.D. Cal. 2014)).

In *Konop v. Hawaii Airlines, Inc.*, the Ninth Circuit held that for a communication "to be 'intercepted' in violation of the federal Wiretap Act, it must be acquired during transmission." 302 F.3d 868, 878 (9th Cir. 2002). The Court in *Konop* explained that "[t]his conclusion is consistent with the ordinary meaning of 'intercept,' which is 'to stop, seize, or interrupt in progress or course before arrival.'" *Id.* (*quoting* Webster's Ninth New Collegiate Dictionary 630 (1985)).

Courts applying Section 631 and the federal Wiretap Act have acknowledged that given the speed of modern internet communications, "the Wiretap Act's application to that form of electronic communication is undoubtedly limited." *NovelPoster*, 140 F. Supp. 3d at 951 (dismissing Wiretap Act and Section 631 claims related to email communications). That is because internet communications, including email, travel so quickly that there is only an incredibly narrow window during which an interception could occur. *See id.* at 951-52. For this reason, most

14

DEFENDANT'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(1) AND 12(B)(6)

claims involving allegations that a wiretap occurred with respect to internet communications fail as a matter of law.  For example, numerous courts have held that while emails may be improperly accessed either on the originating or receiving end, they are not typically intercepted *during transmission.*  S*ee id.; see also, e.g.*, *Mintz v. Mark Bartelstein & Assocs. Inc.*, 906 F. Supp. 2d 1017, 1031 (C.D. Cal. 2012) (granting summary judgment to defendants where "[t]he undisputed facts [ ] show that Defendants did not access, disclose, or use any emails that had been acquired during transmission.  Rather, the emails Defendants viewed were stored on Gmail."); *see also Global Policy Partners, LLC v. Yessin*, 686 F. Supp. 2d 631, 638 (E.D. Va. 2009) ("a qualifying 'intercept' under the [Wiretap Act] ... can only occur where an e-mail communication is accessed at some point between the time the communication is sent and the time it is received by the destination server").  The Ninth Circuit has confirmed that "the existing statutory framework is ill-suited to address modern forms of communication."  *Konop*, 302 F.3d at 874.

Here, Plaintiff has not plausibly alleged that ActiveProspect intercepted an electronic communication while it was in transit from Plaintiff to the Website Owner.  And, the TrustedForm patent makes clear that it does not intercept in-transit communications.  (RJN Ex. 5 at 8 ("in response to the visitor submitting the form, the form data is sent to at least one interested party"); *id.* at Figures 1-4.)

Demonstrating her misapplication of a wiretap interception, Plaintiff uses the word "intercept" to describe the Website Owner's receipt of Plaintiff's communication to it.  (FAC, ¶ 28 ("Plaintiff believed that only [the Website Owner] and any other entities disclosed to her as recipients by [the Website Owner] would be able to ***intercept,*** monitor, or record Plaintiff's personal information entered on [the Website].") (emphasis added.))   Just as the Website Owner could not have "intercepted" Plaintiff's communications to the Website Owner, neither could ActiveProspect, because TrustedForm was deployed by the Website Owner itself on

15

the Website. (FAC, ¶ 40.) Further, consistent with *Konop*, it is simply not plausible that the TrustedForm script intercepted Plaintiff's communication to the Website Owner while in transit—no matter how many times Plaintiff added, without any factual basis, the word "contemporaneously" to the Complaint.

Judge Staton recently granted a defendant's Rule 12(b)(6) motion to dismiss the plaintiffs' federal Wiretap Act and Section 631 claims where the plaintiffs similarly made only conclusory allegations of an interception in transit—just as Plaintiff does here. *See In re Vizio*, 238 F. Supp. 3d at 1227-28. There, the Court held that:

> Plaintiffs have not articulated with sufficient clarity when Vizio supposedly intercepted their communications. Besides their conclusory allegation that Vizio intercepted their electronic communications "during transmission" (Compl. ¶ 128.), . . . While Plaintiffs need not prove their theory of interception on a motion to dismiss, Plaintiffs must provide fair notice to Defendants of when they believe Vizio intercepts their communications.

*Id.* As in *Vizio,* Plaintiff does not plausibly allege when or how ActiveProspect intercepted Plaintiff's communications. Instead, she recites the bare elements of the statute and uses the controlling terms of art without factual allegations that, if proven, could support her claim. That is insufficient. As in *Vizio*, this Court should dismiss Plaintiff's Section 631 claim for failure to adequately plead interception.

### (b)   Plaintiff Has Not Adequately Pled an Unauthorized Connection

Plaintiff's Section 631 claim also fails for the independent reason that the Complaint does not plausibly allege an "unauthorized connection to a transmission line" as required by the statute. *People v. Guzman*, 11 Cal. App. 5th 184, 192 n. 7 (2017), aff'd 8 Cal.5th 673 (2019) (the "practice [of eavesdropping under section 632] is different from wiretapping, which is prohibited by section 631, insofar as it does not require an unauthorized connection to a transmission line, whereas wiretapping does.") ActiveProspect did not engage in any such unauthorized connection and Plaintiff does not allege otherwise.

16

Indeed, Plaintiff contends that she learned about the Website Owner's use of ActiveProspect during the *Quicken* case, where she also learned that the Website Owner—not ActiveProspect—installed the TrustedForm software on its Website. (FAC, ¶ 39-40.)  Plaintiff does not, and cannot, allege that ActiveProspect hacked the Website or otherwise surreptitiously embedded its software on the Website. Accordingly, Plaintiff has not and cannot plead that ActiveProspect made an "unauthorized connection to a transmission line." [14]

Because Plaintiff does not and cannot plead that ActiveProspect intercepted her communication to the Website Owner in transit or made an unauthorized connection to a transmission line, Cause of Action One should be dismissed.

### 2.   Plaintiff Fails to State a Valid Claim under Section 632

Section 632 provides, in relevant part, that "[e]very person who, intentionally and without the consent of all parties to a confidential communication, by means of any electronic . . . device . . . records the confidential communication" violates the statute.  Cal. Pen. Code § 632(a).  Thus, in order to state a valid cause of action for violation of Section 632, Plaintiff must plead facts showing that ActiveProspect "intentionally eavesdropp[ed]" on "a ***confidential*** communication by means of any electronic amplifying or recording device, without the consent of all parties." *Marich v. MGM/UA Telecommunications, Inc.*, 113 Cal. App. 4th 415, 421, 7 Cal. Rptr. 3d 60, 63 (2003).  Plaintiff's FAC fails to meet that requirement.

### (a)   Plaintiff Has Not Adequately Pled That ActiveProspect Recorded Confidential Information

Plaintiff's CIPA claim under Section 632 fails as a matter of law because she does not and cannot allege that ActiveProspect, or anyone else, recorded a

---

[14] Casting ActiveProspect into the role of third-party eavesdropper would be the equivalent of holding a security camera company responsible for monitoring what occurs in its client's department store.  ActiveProspect provides a tool and service to business owners and Plaintiff's carefully worded FAC is not inconsistent with that reality.

DEFENDANT'S MOTION TO DISMISS PURSUANT
TO FED. R. CIV. P. 12(B)(1) AND 12(B)(6)

confidential communication.  It is well-settled that Section 632 only prohibits the nonconsensual recording of "***confidential***" communications.  *See, e.g., People v. Nakai*, 183 Cal. App. 4th 499, 517-18 (Cal. Ct. App. 2010).  As CIPA makes explicit, a "confidential communication" is limited to one where the "circumstances . . . reasonably indicate that any party to the communication desires it" be kept confidential and "excludes a communication" where circumstances indicate the "communication may be overheard or recorded."  Cal. Penal Code. § 632(c).  Unlike telephone or in-person communications, Internet communications lack a reasonable presumption of confidentiality as they are "by their very nature recorded on the computer of at least the recipient, who may then easily transmit the communication to anyone else who has access to the internet . . . ."  *In re Google Inc. Gmail Litig.*, 2013 WL 5423918, at *22-23 (N.D. Cal. Sept. 26, 2013).

Indeed, California courts have held that Internet-based communications are not confidential within the meaning of Section 632.  *See, e.g.*, *Cline v. Reetz-Laiolo*, 329 F. Supp. 3d 1000, 1051 (N.D. Cal. 2018) ("Internet-based communications are not 'confidential' within the meaning of section 632"); *Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836, 849 (N.D. Cal. 2014) ("California appeals courts have generally found that Internet-based communications are not 'confidential' within the meaning of section 632...."); *In re Google Inc.*, No. 13-MD-02430-LHK, 2013 WL 5423918, at *23 (N.D. Cal. Sept. 26, 2013) (reviewing California Courts of Appeal decisions suggesting "internet-based communication cannot be confidential" and concluding that plaintiffs had "not plausibly alleged that they had an objectively reasonable expectation that their email communications were 'confidential' under the terms of section 632."); *People v. Nakai*, 183 Cal. App. 4th 499, 517-18 (Cal. Ct. App. 2010).  "[T]here is no legally protected privacy interest and reasonable expectation of privacy" in the content Plaintiff entered on the Website web form.  *See In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1041 (N.D. Cal. 2014) (citations omitted).  Plaintiff

18

herself testified in *Quicken* that she did not input private information into the Website because she was "apprehensive about the website." RJN Ex. 4, Feb. 28, 2020 Tr. at 57:13-14.)  Thus, by her own account, she did not have a reasonable expectation of privacy.  (RJN Ex. 4, Feb. 28, 2020 Tr. at 57:9-58:3.)  Because Plaintiff here had no reasonable expectation of privacy when she voluntarily populated an Internet website form, she has no valid claim under Section 632.

Plaintiff's claim under Section 632 also fails because she admits that she expected the Website Owner to collect and record the information she provided.  (FAC, ¶¶ 26-27.)  The Website Owner's use of TrustedForm in aid of its own compliance and recordkeeping did not create any greater impact on Plaintiff's purported privacy interests than Plaintiff's own conduct and interactions with the Website Owner and no valid claim has been alleged.  *See Armstrong v. Allied Ins. Co.*, 2014 WL 12591844, at *6 (C.D. Cal. Aug. 19, 2014) (citing *Pioneer Electronics, Inc. v. Sup. Ct. of L.A.*, 40 Cal. 4th 360, 370 (2007) ("If the allegations 'show no reasonable expectation of privacy or an insubstantial impact on privacy interests, the question of invasion may be adjudicated as a matter of law.'")).  Thus, Plaintiff does not and cannot state a valid claim against the provider of software used at the direction of and for the Website Owner, whom she concedes did not invade her privacy.  Plaintiff's Section 632 claim, therefore, fails.

> **(b)**   **Plaintiff Has Not Adequately Pled That ActiveProspect Intended to Record Her Confidential Information**

Plaintiff also fails to adequately allege the intent element required to state a claim under Section 632.  Section 632 prohibits only the *intentional* eavesdropping of a confidential communication.  *Marich v. MGM/UA Telecommunications, Inc.*, 113 Cal. App. 4th 415, 421 (Cal. Ct. App. 2003).  "[T]he recording of a confidential conversation is intentional if the person using the recording equipment does so with the purpose or desire of recording a confidential conversation, or with the knowledge to a substantial certainty that [its] use of the equipment will result in the recordation

of a confidential conversation." *Id.* (internal quotation marks and citation omitted).

Plaintiff does not and cannot allege that ActiveProspect intentionally recorded any confidential communication. Although Plaintiff's Complaint implies (but certainly does not plead) that ActiveProspect randomly installs the TrustedForm software onto third-party websites for its own unstated purposes, (*see, e.g.,* FAC, ¶ 14), Plaintiff is well aware from the record evidence in the *Quicken* case that it was the Website Owner who installed TrustedForm on the Website, with the intent of documenting consumer consent. Thus, to the extent that there was a "recording," of Plaintiff's information, it was the Website Owner, not ActiveProspect, that did the recording. Accordingly, Plaintiff has not alleged that ActiveProspect had the requisite intent to record her purportedly confidential information under Section 632, and her claim should fail as a matter of law.

### 3.    Plaintiff Fails to State a Valid Claim Under Section 635

Plaintiff's CIPA claim under Section 635 also fails on its face for the reasons stated above and because she does not and cannot allege that TrustedForm is a "device" under the law. Section 635 imposes liability on:

> every person who manufactures, assembles, sells, offers for sale, advertises for sale, possesses, transports, imports, or furnishes to another *any device* which is primarily or exclusively designed or intended for eavesdropping upon the communication of another, or any device which is primarily or exclusively designed or intended for the unauthorized interception or reception of communication between cellular radio telephones or between a cellular radio telephone and a landline telephone . . . or communications between cordless telephones or between a cordless telephone and a landline. . . .

Cal. Penal Code § 635(a) (emphasis added). Plaintiff does not and cannot allege that TrustedForm has anything to do with cellular radio telephone, landline, or cordless telephone communications. Plaintiff, therefore, cannot pursue her Section 635 claim

on that basis.

Plaintiff's Section 635 claim fails because she does not plausibly allege how TrustedForm is a "device which is primarily or exclusively designed for eavesdropping upon the communication of another." Plaintiff's Complaint is devoid of any allegations that, if proven, could demonstrate why TrustedForm comes within the purview of Section 635's definition of "device," let alone that it is a device used primarily or exclusively for the purposes set forth in that section. As discussed above, TrustedForm is not designed for eavesdropping, but rather is software used to *protect* privacy interests. (RJN Ex. 5 at 8 (TrustedForm was created because of the "need for an improved means for independently verifying the authenticity of leads that are generated from lead generating websites.") Thus, Plaintiff's Section 635 CIPA claims fails as a matter of law. *See Ideal Aerosmith, Inc. v. Acutronic USA, Inc.*, No. 07-cv-1029, 2007 WL 439447, at *4 (E.D. Pa. Dec. 13, 2007) (dismissing Federal and Pennsylvania state wiretapping claims where plaintiff did not plausibly allege use of a wiretapping device). To survive dismissal, federal pleading standards require a Complaint to have more than the "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" that Plaintiff sets forth here. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555.) Plaintiff cannot satisfy that standard because TrustedForm is not an eavesdropping device. Her Section 635 claim should be dismissed.

### 4. Plaintiff Fails to State a Valid Claim for Invasion of Privacy Under the California Constitution

To establish a valid claim under the California Constitution's right to privacy, a plaintiff must first demonstrate three elements: (1) a legally protected privacy interest; (2) a reasonable expectation of privacy under the circumstances; and (3) conduct by the defendant that amounts to a serious invasion of the protected privacy interest. *Armstrong v. Allied Ins. Co.*, No. EDCV140424JGBSPX, 2014 WL 12591844, at *5 (C.D. Cal. Aug. 19, 2014). It is well settled that to get past the pleading stage on a motion to dismiss for such a claim, a plaintiff must pass a "high

21

bar." *Low v. LinkedIn*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012) (citing *Pioneer Elecs. (USA), Inc. v. Superior Court*, 40 Cal. 4th 360, 370 (2007)). Plaintiff's FAC does not meet that "high bar" because it fails to allege a valid, reasonable expectation of privacy or that ActiveProspect's conduct amounts to a serious invasion of a protected privacy interest.

### (a) Plaintiff Has Not Adequately Pled That She had a Reasonable Expectation of Privacy

A "reasonable" expectation of privacy is an objective entitlement founded on broadly based and widely accepted community norms. *Hill v. Nat'l Collegiate Athletic Assn.*, 7 Cal. 4th 1, 37 (1994). When deciding whether a plaintiff has met the pleading standard to assert a constitutional privacy claim, a court "must take into account any 'accepted community norms,' advance notice to [Plaintiff] . . ., and whether [Plaintiff] had the opportunity to consent to or reject the very thing that constitutes the invasion." *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1037 (N.D. Cal. 2014) (citation omitted). Plaintiff's allegations must show that she conducted "herself in a manner consistent with an actual expectation of privacy, i.e., . . . she must not have manifested by . . . her conduct a voluntary consent to the invasive actions of defendant." *Id* at 1037-38. In *Yahoo*, for example, the court found that there is no "legally protected privacy interest and reasonable expectation of privacy in emails as a general matter[.]" *Id.* at 1041

Similarly here, neither Plaintiff, nor anyone else, could have a reasonable expectation of privacy when they voluntarily input information into the a web form, such as on the Website. (*See* RJN Ex. 4, Feb. 28, 2020 Tr. at 57:9-58:3.)  Thus, Plaintiff's constitutional invasion of privacy claim should fail.

### (b) Plaintiff Has Not Adequately Pled That ActiveProspect's conduct amounts to a serious invasion of a protected privacy interest

Moreover, Plaintiff does not and cannot validly allege that the use of TrustedForm amounted to a "serious invasion" of her privacy. "Actionable invasions

of privacy must be sufficiently serious in their nature, scope, and actual or potential impact to constitute an *egregious breach* of the social norms underlying the privacy right." *In re iPhone Application Litig*., 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) (quoting *Hill*, 7 Cal. 4th at 26, 37.).  Thus, the alleged breach must not be slight or trivial in nature.  *Hill*, 7 Cal. 4th at 37.  "Even disclosure of personal information, including social security numbers, does not constitute an egregious breach of the social norms to establish an invasion of privacy claims."  *Low v. LinkedIn*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012) (citations omitted); *see In re iPhone Application Litig.,* 844 F. Supp. 2d at 1064 ("Here, the information allegedly disclosed to third parties included the unique device identifier number, personal data, and geolocation information from Plaintiffs' iDevices. Even assuming this information was transmitted without Plaintiffs' knowledge and consent, a fact disputed by Defendants, such disclosure does not constitute an egregious breach of social norms"); *Ruiz v. Gap, Inc*., 540 F. Supp. 2d 1121, 1127–28 (N.D.Cal. 2008) *aff'd*, 380 Fed. App'x. 689 (9th Cir. 2010) (holding that the theft of a retail store's laptop containing personal information, including the social security numbers, of job applicants did not constitute an egregious breach of privacy and therefore was not sufficient to state a valid claim under the California Constitutional right to privacy).

Here, there is nothing offensive or egregious about the use of TrustedForm on the Website to verify consumers' responses and consent to be contacted in compliance with various privacy laws.  (*See* RJN Ex. 5 at 8 (TrustedForm's purpose is for "an improved means for independently verifying the authenticity of leads that are generated from lead generating websites."))  Plaintiff does not, and cannot, allege that the Website's use of TrustedForm did not have a legitimate business purpose for the information.   Thus, Plaintiff does not and cannot plead that ActiveProspect's provision of its software was a highly offensive, egregious breach of the social norms. *See, e.g., Fogelstrom v. Lamps Plus, Inc*., 195 Cal. App. 4th 986, 993 (2011) ("[W]e

DEFENDANT'S MOTION TO DISMISS PURSUANT
TO FED. R. CIV. P. 12(B)(1) AND 12(B)(6)

have found no case which imposes liability based on the defendant obtaining unwanted access to the plaintiff's private information which did not also allege that the *use* of plaintiff's information was highly offensive."); *Mitchell v. Regional Serv. Corp.*, No. C 13-042212-JSW, 2014 WL 12607809, at *5 (N.D. Cal. Apr. 23, 2014) (holding that trespassing onto plaintiff's property and observing personal activities of plaintiff did not amount to a serious invasion of privacy because defendant had legitimate business and legal reason for doing so); *Phillips v. Archstone Simi Valley LLC*, No. CV155559DMGPLAX, 2016 WL 400100, at *9 (C.D. Cal. Feb. 1, 2016) (dismissing invasion of privacy claim because plaintiff failed to allege how purported intrusions were egregious and serious in nature).   The mere observation and confirmation of information (even if accepted as personal) is not sufficient to satisfy the requirement for alleging the highly offensive, egregious conduct required to state a valid claim for invasion of privacy.  Thus, Plaintiff's invasion of privacy claim fails as a matter of law and should be dismissed.

### 5. Plaintiff Fails to State a Valid Claim for Intrusion Upon Seclusion

Plaintiffs intrusion upon seclusion claim is duplicative of her constitutional privacy claim and fails for the same fundamental, fatal flaws.  To state a valid claim for intrusion upon seclusion, a plaintiff is required to allege that: (1) the defendant intentionally intruded into a place, conversation, or matter as to which the plaintiff had a reasonable expectation of privacy; and (2) the intrusion was "highly offensive" to a reasonable person.  *In re Google, Inc. Privacy Policy Litig.*, 58 F. Supp. 3d 968, 987 (N.D. Cal. 2015)   As set forth above, Plaintiff has failed to allege a reasonable expectation of privacy, and also failed to allege any highly offensive conduct.  Plaintiff's intrusion upon seclusion claim, thus, fails for the same reasons as her invasion of privacy claim.  *See id.* at 987-88; *In re iPhone Application Litig.*, 844 F. Supp. 2d at 1063 (dismissing invasion of privacy claim because information disclosed did not amount to egregious breach of social norms)*; In re Google, Inc. Privacy Policy*

DEFENDANT'S MOTION TO DISMISS PURSUANT
TO FED. R. CIV. P. 12(B)(1) AND 12(B)(6)

*Litig.*, 58 F. Supp. at 988 n.133, 134 (N.D. Cal. 2014) (relying on invasion of privacy cases to dismiss intrusion upon seclusion claim and collecting cases).

### 6. Plaintiff's CIPA Claims Are Time-Barred

CIPA claims have a one-year statute of limitations that Plaintiff failed to meet. *Montalti v. Catanzariti*, 191 Cal. App. 3d 96, 98 & n.1 (1987); *see also Brodsky v. Apple, Inc.*, 2019 WL 4141936, at *11 (N.D. Cal. Aug. 30, 2019) ("[u]nder CIPA, the applicable statute of limitation is one year.") Plaintiff's claims—including her CIPA claims—arise from her interaction with the Website in October 2018. (FAC, ¶ 19.). Because she did not file suit until 19 months later, in July 2020 (*See* Dkt. No. 1), Plaintiff's CIPA claims are time-barred.

Plaintiff alleges that the "delayed discovery" doctrine saves her claim, but she did not plead the allegations necessary to avail herself of that doctrine. (FAC, ¶¶ 53-54.) The delayed discovery doctrine required Plaintiff to "specifically plead facts to show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 808 (2005) (citation omitted). Plaintiff attempts to plead the first elements by alleging that she only discovered the basis for her claims in December 2019, through discovery in the *Quicken* case. (FAC, ¶ 53.) But she pleads no diligent investigation whatsoever, nor does she allege that she "could not have reasonably discovered facts supporting the cause of action within the applicable statute of limitations period." *Fox*, 35 Cal. 4th at 809. That failure of pleading is fatal to satisfying the doctrine and overcoming the statute of limitations.

Plaintiffs "are charged with presumptive knowledge of an injury if they have 'information of circumstances to put them on inquiry,' or if they have 'the opportunity to obtain knowledge from sources open to their investigation." *Id.* at 807-08 (internal alterations omitted). "[S]uspicion of one or more of the elements of a cause of action, coupled with knowledge of any remaining elements, will generally trigger the statute

of limitations period." *Id*. at 807. Plaintiff claims she "could not reasonably have discovered the facts giving rise to the claims alleged herein" (FAC, ¶ 54); however, Plaintiff does not dispute that she knew her information was collected and recorded by the Website Owner when she accessed the website in October 2018. (*Id.* at ¶¶ 26-27.) Further, the Website's Privacy Policy was available to her by hyperlink during and after her October 2018 visit to the Website, and that if she read that, she would have confirmed the Website's use of service providers like ActiveProspect. (Smith Decl., Exs. A-B (describing that technology was implemented on the Website and was "used in analyzing trends, administering the site, tracking users' movements around the site (including capture of visual snapshots of your activity on our site.)") Further, in conducting diligence to bring the *Quicken* case, or while litigating the *Quicken* case, it is not plausible that neither Plaintiff nor her counsel reviewed the Website's Privacy Policy. Plaintiff, thus, was on "inquiry notice" of her claims well before December 2019 and certainly before July 2019; thus, Plaintiff's CIPA claims are time-barred. *See NYC Topanga, LLC v. Bank of Am.*, 2015 WL 4075844, at *6 (C.D. Cal. July 2, 2015) ("Plaintiff's failure to read the Agreement cannot support a claim for delayed discovery."); *DeBruyne v. Equitable Life Assur. Soc'y of U.S.*, 920 F.2d 457, 466 (7th Cir. 1990) ("[P]laintiffs cannot avoid the statute of limitations by possessing, but failing to read, the documents that would put them on inquiry notice."). Plaintiff's CIPA claims should be dismissed, on this additional basis, as time barred.

### 7. Plaintiff's Claims Also Fail Because She Voluntarily Engaged in the Alleged Activity

Plaintiff's claims fail for the additional reason that as alleged she consented to the Website Owner's use of TrustedForm on the Website.

Sections 631 and 632 of CIPA prohibit certain activities only where no consent has been given. For example, Section 631 holds liable anyone "who willfully *and without the consent of all parties to the communication*, *or in any unauthorized manner*, reads, or attempts to read, or to learn the contents or meaning of any

26

message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state . . . .” Cal. Pen. Code § 631.  Section 632 attributes liability to “[e]very person who, intentionally and *without the consent of all parties to a confidential communication*, by means of any electronic amplifying or recording device, eavesdrops upon or records the confidential communication . . . .” Cal. Pen. Code § 632.  “Where lack of consent is an express element of a claim, as is the case here, it must be alleged in the complaint,” and may be challenged on a motion to dismiss.  *Garcia v. Enter. Holdings, Inc.*, 78 F. Supp. 3d 1125, 1136 (N.D. Cal. 2015).

While Plaintiff alleges in her Complaint that she “denies having conferred [her] consent, the Court need not accept as true any allegations contradicted by ‘matters properly subject to judicial notice or by exhibit’ or ‘that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.’” *Garcia*, 78 F. Supp. 3d at 1136.  Here, the Website’s Privacy Policy was conspicuously hyperlinked at the bottom of each and every page of the Website visited by Plaintiff.  (*See* Smith Decl., ¶¶ 4-6.)  Plaintiff admits that should could have viewed the Privacy Policy but “wouldn’t have worried about it[.]”  (RJN Ex. 4, Tr. At 64:21-65:8.)    Through the Website’s Privacy Policy, and LMB’s Privacy Policy (which was also presented to her), Plaintiff was on notice that the Website used third-party technologies like ActiveProspect.  (Smith Decl. Exs. A-B); *see also, e.g., Maghen v. Quicken Loans Inc.*, 94 F. Supp. 3d 1141, 1145 (C.D. Cal. 2015), *aff’d in part, dismissed in part*, 680 F. App’x 554 (9th Cir. 2017); *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1030 (N.D. Cal. 2014) (granting Yahoo’s motion to dismiss claim under Wiretap Act because email users agreed to terms of use and privacy policy); *Gonzales*, 305 F. Supp. 3d at 1092 (dismissing invasion of privacy claim where it was not reasonable to expect geolocation data would not be shared with others).  Because Plaintiff consented to the Website using TrustedForm and input her information to the web form anyway, she

DEFENDANT’S MOTION TO DISMISS PURSUANT
TO FED. R. CIV. P. 12(B)(1) AND 12(B)(6)

has no valid claims.

Similarly, Plaintiff's Section 635 and invasion of privacy claims under the California Constitution and common law fail because there is no "reasonable expectation of privacy" where a Plaintiff voluntarily provides information online. *See, e.g.*, *Gonzales v. Uber Techs., Inc.*, 305 F. Supp. 3d 1078, 1092 (N.D. Cal. 2018) (no reasonable expectation of privacy in Plaintiff's geolocation data that Plaintiff "consented to the sharing of his geolocation data with perfect strangers (Lyft riders); *id.* (quoting *In re Yahoo*, 7 F. Supp. 3d at 1040-41) ("lack of consent does not matter so much as the nature of the information in which he or she alleges a privacy interest.")

And while Plaintiff may claim that she did not affirmatively consent to the Website's terms by affirmatively clicking submit, "that argument is germane to a clickwrap agreement, not a browsewrap agreement, which is at issue here. Unlike a clickwrap agreement, a browsewrap agreement does not require the user to manifest assent to the terms and conditions expressly; rather, a party instead gives his assent simply by using the website. Where a browsewrap agreement is at issue, the terms of the agreement are binding, even if the user did not actually review the agreement, provided that the user had actual knowledge of the agreement or the website put "a reasonably prudent user on notice of the terms of the contract." *Garcia*, 78 F. Supp. 3d 1125 at 1137 (internal quotations and citations omitted). Here, Plaintiff was on notice that the Website Owner had a Privacy Policy, which disclosed that third-party technologies were utilized to document interactions with the Website. On this additional ground, her Complaint fails as a matter of law.

## IV.  **CONCLUSION**

For the foregoing reasons, ActiveProspect respectfully requests that this Court dismiss Plaintiff's Amended Complaint in its entirety for lack of subject matter jurisdiction or as a matter of law.

28

DEFENDANT'S MOTION TO DISMISS PURSUANT
TO FED. R. CIV. P. 12(B)(1) AND 12(B)(6)

DATED:  December 9, 2020

KELLEY DRYE & WARREN LLP
Lauri A. Mazzuchetti (*Pro Hac Vice*)
Kimberly C. Carter
Tahir L. Boykins

_Tahir Boyki_
Tahir L. Boykins
Attorneys for Defendant ActiveProspect, Inc.

29

DEFENDANT'S MOTION TO DISMISS PURSUANT
TO FED. R. CIV. P. 12(B)(1) AND 12(B)(6)